### SALE v. MELETUS et al.

(Second Division. Nome. January 9, 1908.)

No. 1,568.

1. MORTGAGES (§ 423*)—OPTIONAL CONTRACT OF SALE—CONSTRUCTION —PREMATURE FORECLOSURE.

> Defendants Meletus and Enoch mortgaged certain mining claims to plaintiff for $7,500. The terms of the mortgage were that it should be void upon the payment of that sum to the mortgagees, and further provided that it should be paid out of the first moneys due, owing, payable, belonging to, or received by the mortgagees from such sale. The mortgagees entered into a written option with the other defendants, agreeing to sell to them the mortgaged premises and other property for $50,000, payable out of the proceeds of working the mines. The mortgagees received $3,500 in earnest money, subject to forfeiture, to bind the bargain. The remainder was not paid, and not due, from any work in the mines under the option. Plaintiff brought suit to foreclose the mortgage. *Held*, that under the terms of the option there had been no final sale of the premises, that the mortgage was not due according to its terms, and that the foreclosure suit was prematurely begun and must be dismissed.

> [Ed. Note.—For other cases, see Mortgages, Dec. Dig. § 423.*]

---

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

This is a suit to foreclose a mortgage dated October 23, 1905. It purports to secure an indebtedness of $7,500, payable as hereinafter stated, with interest at 12 per centum per annum after default in payment of the mortgage debt.

The complaint alleges (1) the delivery of the mortgage on its date, October 23, 1905, and recites (2) the covenant of the mortgage, whereby the said defendants Constantine Meletus and L. C. Meletus agreed to pay the said mortgage debt of $7,500 when and as soon as the mortgaged premises, or any part thereof, were sold by the said mortgagors, or either of them, such payment to be made out of the first moneys due, payable, owing, belonging to, or received by the said mortgagors, or either of them, by or by reason of any such sale or sales, and (3) that on or about January 24, 1906, the defendants Constantine Meletus and Abner Enoch entered into a certain agreement in writing to sell, and pursuant thereto did sell, the mortgaged premises to the defendant T. S. White, in trust for the defendant Pittsburg–Dick Creek Mining Company of Alaska, and that the defendant Constantine Meletus from and on account of said sale received from said T. S. White, trustee as aforesaid, and the said Pittsburg-Dick Creek Mining Company of Alaska, various sums at various dates, namely: On or about January 24, 1906, the sum of $1,500; on or about January 25, 1906, the sum of $3,500; on or about April 1, 1906, the sum of $10,000; and on or about July 15, 1906, the sum of $13,750—but that he has not paid to the plaintiff any part of the principal sum and interest mentioned in the mortgage.

In the habendum of the mortgage there is this proviso:

"That these presents shall be void if the mortgagors shall pay or cause to be paid to the mortgagee the sum of $7,500 when and as soon as said mortgaged premises, or any part thereof, are sold by the mortgagors, or either of them, to any other person or persons whomsoever, such payment to be made out of the first moneys due,

owing, payable, belonging to, or received by the mortgagors, or either of them, from or by reason of any such sale or sales."

The case came on for trial before the court without a jury on the 14th day of November, 1907, and at the close of the testimony on the side of the plaintiff, the plaintiff having offered in evidence the alleged agreement of sale, marked "Plaintiff's Exhibit A," the defendants made a motion to dismiss the plaintiff's bill, the grounds of which were these: The evidence does not show (1) that there is anything due under the mortgage, nor (2) that the conditions of the mortgage have been broken. Whereupon the court declined to rule upon the motion at that time, and reserved his decision till the close of the trial.

J. W. Albright and F. E. Fuller, for plaintiff.

Hobbes & Bell, for defendants Meletus.

T. M. Reed, for defendants White and Pittsburg-Dick Creek Mining Co. of Alaska.

MOORE, District Judge. The grounds of the motion together amount to the assertion that the plaintiff has not established by his evidence a right of action under the terms and conditions of the mortgage. The plaintiff rests his right of action on the theory that the foregoing agreement constituted a sale of the mortgaged property, and that Constantine Meletus received part of the stipulated price therefor from the Pittsburg-Dick Creek Mining Company of Alaska, pursuant to the agreement. Is the agreement, then, to be construed, in accordance with this theory, as a sale, or, what is the same, an executed agreement to sell?

The second paragraph stipulates in hæc verba that:

"For and in consideration of one thousand five hundred dollars to us in hand paid at the execution and delivery of these presents, the payment and receipt of which are acknowledged, we, the said Constantine Meletus and Abner Enoch, hereby sell, grant, and give to T. S. White, in trust for the Pittsburg-Dick Creek Mining Company

of Alaska, which is about to be incorporated, and until such corporation shall be formed and as soon as said incorporation shall be completed, to said Pittsburg-Dick Creek Mining Company of Alaska, its successors and assigns, the sole and exclusive right, privilege, and option to purchase, and for the further consideration hereinafter specified, to own and hold, forever, the said waters, water rights and appropriations, ditch locations, lands, mines, mining claims, etc., enumerated below, all of which are represented on maps and drawings presented by us in connection with this paper, viz."

Here follows in the same paragraph a description of the mortgaged premises in items designated in the agreement as "1," "2," and "3." These mortgaged properties consist of certain ditch and water rights, known as the Bryan Creek ditch and water property and the Quartz Creek ditch and water property, and include a number of claims and fractional interests in claims situate on Dick creek and its left fork, all of which mining and ditch properties are within the Port Clarence mining and recording district, Alaska. The undivided one-half of mining claim No. 3 below discovery on Dick creek is not among the mortgaged properties. In items 3 and 4 are embraced other mining claims not covered by the mortgage.

Paragraph 3 of the agreement stipulates that the further consideration mentioned just above (in paragraph 2) to be paid by the said Pittsburg–Dick Creek Mining Company of Alaska (in addition to the $1,500 mentioned above) for "the said waters, water rights and appropriations, ditch locations, lands, mining claims, mines, etc., to entitle the said mining company to the full and complete ownership thereof and title thereto, and the time for payment of the same are as follows." Here are enumerated the several apportioned payments of stock and cash to be delivered in payment for all the several properties included in the above option to purchase, and designating the time for the delivery of the several portions of the total con-

sideration and for payment of the special prices for the several properties.

In the enumeration of the parts of the total consideration for the transfer of all the property offered by the said Meletus to said trustee for sale to said projected corporation are these items:

."(2) $3,500 in money to be paid to Constantine Meletus personally, or by deposit, draft, or other remittance to his credit, at the Scandinavian American Bank at Seattle, in the state of Washington, on or before the 25th day of February, 1906; (3) $10,000 in money to be paid to said Meletus personally, or by deposit, draft, or other remittance to his credit, at said bank, on or before the 1st day of April, A. D. 1906; (4) $13,750 in money to be paid to said Meletus, or to his credit as stated before, at said bank on or before the 15th day of July, A. D. 1906; (6) $50,000 in money to be paid to said Meletus, or to his credit, at said bank, in the manner aforesaid, when and after said amount shall have been [obtained] from said mining claims by operation thereon after June 1, 1907, and after payment of the expenses of said operation, from the production thereof."

The agreement next contains a provision that Meletus and Enoch shall place in escrow deeds for conveyance of all the mortgaged properties, together with the undivided one-half of the above-mentioned mining claim No. 3 below discovery on Dick creek, on or before April 1, 1906, and a provision that:

"No part of the money mentioned as payable on or after said 1st day of April, 1906, shall be actually due, payable, or demandable until after said deed shall have been so placed in escrow."

Next, in subparagraph 1 of paragraph 4 is the provision that the deed for the one-half of No. 3 below discovery, Dick creek, shall be fully delivered to said mining company on April 1, 1906, upon payment of the $10,000 hereinbefore mentioned. In subparagraph 2 it is provided that a deed for all the mortgaged properties—

"shall be fully delivered to said mining company, which shall thereupon become the sole and absolute owner of said premises, upon payment of the $50,000 mentioned above."

The seventh paragraph contains this provision:

"A failure of the aforesaid mining company to make any of the aforesaid payments at the time the same shall be actually due and demandable as provided above shall (except as stated below) terminate all the rights under the terms and provisions of this paper, and shall work a forfeiture of all payments made by it prior to such failure, unless an extension of time of payments shall be made by a party having authority so to do."

Lastly, the eighth paragraph stipulates as follows:

"The aforesaid Pittsburg-Dick Creek Mining Company of Alaska shall have possession and control of all the aforesaid properties, location, land, claims, rights, etc., at its pleasure immediately on or at any time after the payment of the aforesaid $3,500, and the right to work upon, develop, and operate the same, and to have and own for its own benefit all the products of any operations it may conduct thereon."

The quotations from the Pittsburg agreement have been given for the purpose of grouping together the parts of the agreement which should be considered in construing the terms of the agreement relating in any way to a sale of the mortgaged premises.

It was the plain intent of the signers of the option agreement, as gathered from its four corners, for a consideration of $1,500 paid to them at the date of the agreement, to sell and grant to T. S. White in trust for the Pittsburg-Dick Creek Mining Company of Alaska, a corporation then at the point of being formed, to hold till the formation of the corporation should be completed, and then to the corporation, its successors and assigns, the exclusive right and option to purchase certain mining properties and water and ditch holdings of said Meletus and Enoch, and certain other mining properties and ditch and water holdings of others represented by them.

When the consideration was paid the offer embodied in the instrument became thereby a contract of option binding the signers, until terminated by a forfeiture of the optionees' rights

or merged in a transfer of the properties to the optionees. As a contract it obligated the signers upon receipt of fixed portions of the consideration at certain set times to deliver conveyances to the optionee, the mining company, for certain blocks or parcels of the properties embraced by the option.

Now the evidence shows that Constantine Meletus up to the institution of the suit had received as payee named in the contract, in addition to the $1,500, the consideration binding them to the terms of the contract, the total sum of $27,250 from the optionees; that of this sum $10,000 was the cash payment of the company to the optionor, Meletus, in token of the exercise by the company of its option to take a conveyance for the undivided one-half of No. 3 mining claim below discovery on Dick creek, a claim not covered by the mortgage. The other sum of $13,750 was paid for a conveyance of other properties outside of the mortgaged premises.

It does not appear, from the contract or evidence, that the remaining sum of $3,500 was paid as part of the price for any single group of properties. This payment seems to have been in the nature of earnest money, subject to forfeiture if the mining company should decide not to take a transfer of any of the optioned properties; and, if they should decide to receive a conveyance of all the properties, then, and not before, it would constitute part of the consideration of the sale of the entire list of properties.

It further appears by the evidence that the mining company had not, at the time of the beginning of the suit, exercised its option to become vested with the full ownership of the several properties included in the mortgage. Indeed, the time for claiming a conveyance of the mortgaged premises pursuant to the contract of option had not then arrived. That the right of the mining company to exercise its option to purchase the mortgaged properties extended beyond the time of filing the suit is made clear by a reading of subparagraph 6, above cited,

of paragraph 3 of the contract, in connection with subparagraph 2 of paragraph 4. By comparing these two subsections, it plainly appears that the cash price of $50,000 upon payment of which the mining company would be entitled to receive a deed for the mortgaged properties, was not to be paid until the amount was produced from the mortgaged mining claims by operating them. By the contract they were to begin operating the claims after June 1, 1907, whilst the suit was brought on August 8, 1906. Until the $50,000 was raised by mining, or in some other manner, a sale of the mortgaged premises could not, the contract being unchanged, take place. The company was still at liberty, when the suit was brought, either to refuse to purchase, or, at their pleasure, to consummate a sale, as the contract did not make it obligatory upon them to buy. Instead of their being required by the contract to purchase, it simply gave them the opportunity to purchase upon the terms stated in the contract.

As a sequence of law from the facts and considerations thus detailed, it results that the suit was premature, and, being so, the case will be dismissed, pursuant to the defendants' motion, at the cost of the plaintiff, but without prejudice.