Argued September 6; reversed October 3; rehearing denied
November 21, 1933

# ·GIBRALTAR FINANCE CORPORATION *v.*
# ROUSE ET AL.

(25 P. (2d) 559)

*John J. Beckman,* of Portland, for appellants.

*Harry George* and *Sims & Sims,* all of Portland,
for respondent.

BEAN, J. This is a suit to foreclose a mortgage on real property. From a decree in favor of plaintiff, defendant Carrie Rouse appeals.

The mortgage was executed by George H. Rouse, while a single man, in favor of the Equitable Savings & Loan Association and afterwards the property was conveyed to Carrie Rouse, his wife. It is a disappearing type of mortgage. There were to be 96 payments of $16.97 each. The mortgage was assigned by the Equitable Savings & Loan Association to plaintiff about February 3, 1932. The complaint alleges that the defendant paid the amounts falling due up to and including December 20, 1931,

"except ninety-four cents (94c), due on the December 20, 1931 payment, Sixteen Dollars and 97/100 ($16.97), due on January 20, 1932 payment; Eight Dollars and 34/100 ($8.34) due on unpaid balances advanced under mortgage and Ten Dollars and 87/100 ($10.87) due for accrued interest thereon to date, which amounts are now due, owing and unpaid; * * *"

together with $446.11, and interest at 8 per cent per annum from December 20, 1931. Plaintiff asserts an acceleration of the mortgage on account of the default, and alleges that it is all due and that defendant has failed to pay the taxes when due.

The mortgage contains the following covenant:

"* * * The mortgagor agrees to pay said note according to the terms thereof and, when due, all taxes and assessments and other charges levied upon said property; to keep the same free from all incumbrances, including those of record, whether legal or otherwise; * * * to keep all buildings in good repair and continuously insured; * * * should the mortgagor fail to keep any of the foregoing covenants, then the mortgagee may at its option carry out the same and all its expenditures therefor shall draw interest until repaid

at the rate of ten per cent per annum, be repayable by the mortgagor on demand, and shall be secured by this mortgage.''

The mortgage contains the further general covenant:

''Time is material and of the essence hereof, and if default be made in the payment of the debt hereby secured or any installment thereof, or interest, or in any of the covenants herein contained, then, in such or any of said cases, the balance of unpaid principal with accrued interest, and all other indebtedness hereby secured, shall at the mortgagee's election become immediately due, without notice, and this mortgage may be foreclosed.''

It is pleaded in the answer, in effect, that at the time of the commencement of the suit all the payments due had been made and that there was no default on the part of plaintiff. It appears that the Equitable Savings & Loan Association advanced the taxes on the property for 1929, and some insurance, but did not pay the taxes for 1930, which account was kept under a separate account from the mortgage account proper. George Rouse, husband of Carrie Rouse, made certain sales of real estate on commission for the Portland Mortgage Company. The commissions due for the sales of the real estate were assigned to the Equitable Savings & Loan Association in an effort to keep the mortgage payments in good standing.

Plaintiff avers that the mortgage was in default on three counts: first, nonpayment of installments; second, nonpayment of taxes; third, allowing liens and judgments to be placed on record against the property. Defendant admits nonpayment of the taxes, but alleges that there was sufficient money in the hands of the Equitable Savings & Loan Association to pay the

same. We refer to Carrie Rouse as the defendant herein, George Rouse having defaulted. The circuit court found that there was no default in the payment of installments or interest thereon, but decreed a foreclosure on account of the failure to pay the taxes. There were several small payments made on the commission contracts and credited at different dates and at irregular times and the matter was considerably complicated. It appears that the commissions for the sale of property made by George Rouse were to be paid to him when payments were made on the property, which he sold, and several amounts of the commissions became due and were paid.

■ As we read the record the controversy centers around the question of whether or not the following two payments were made, which were entered in the receipt book furnished by the Equitable Savings & Loan Association to defendants:

"October pay't. This stub, when receipted, is a receipt for $33.94. To be applied on account of interest and principal of loan described on cover of this receipt book. Paid Nov. 29, 1927, Rec'd by H.R."

"November pay't. This stub, when receipted, is a receipt for $67.88. To be applied on account of interest and principal of loan described on cover of this receipt book. Paid Jan. 29, 1928, Rec'd by H.R."

The defendant was not given credit for these payments. As the testimony indicates the initials "H.R." stand for Harry Rayburn, who was a clerk in the office of the Equitable Savings & Loan Association and duly authorized to receive and receipt for payments. He was not called as a witness.

Carrie Rouse, as a witness in her own behalf, testified that these payments were made. She is corrobo-

rated by a witness, Mae R. Sauers, who was with her in the office of the Equitable Savings & Loan Association at the time the payments were made.

R. A. Schramm, a witness for plaintiff, who testified in regard to the records of the Equitable Savings & Loan Association, and is secretary of that association, as relating to the matter of the mortgage and credits in this case, testified as follows:

"Q. Now, after this letter—or at the time you assigned the mortgage over to the Gibraltar Finance Corporation, you gave Mrs. Rouse no credit for the $33.94, shown in Book No. 1 and marked November 29, 1928, shown as marked 'duplicate'?

A. No.

Q. And it shows no credit for $67.88 which has a check mark on it?

A. It does not; we show that in the above.

Q. And if these two payments were made and her account was credited with them, it would put her account in good standing?

A. I rather think so; that is some $90.00.

Q. Yes.

A. Nearly $100 in dispute, yes, I think it would.

\*　　　\*　　　\*　　　\*　　　\*

Q. And there would be more than enough to pay the taxes?

A. I think so."

And again Mr. Schramm states, in answer to the question:

"Q. (By the Court) I understood you to say that if this payment, these payments, $33.94 marked 'duplicate' was actually paid and not a duplicate and this $67.88, if that had been actually paid as shown in the book and not marked off, if those payments had been actually made, the mortgage would have been in good standing at the time this suit was commenced?

A. Yes sir."

We think that Mr. Schramm understood all of the circumstances and that the only question for us to determine is whether those payments were made. From the testimony we are compelled to find that they were. They may never have been turned over to the company or put upon the books of the company. Harry Rayburn receipted for the payments in the regular way about four years before the trial of this suit. Several other monthly payments had been made regularly and receipted for in 1927 and 1928, as shown by the stubs of the same book, which indicates that these payments were regularly made. It is not thoroughly explained under what circumstances the stub for $33.94 payment was marked "Duplicate" or why the stub receipt for $67.88 was crossed off. Under the testimony in this case it is too late to dispute those payments without plain testimony.

Mrs. Rouse asserts that the association failed to advise her upon request as to the standing of her mortgage and account and led her to believe it would be taken care of by the collections made of the commissions. The testimony does not show that at the time the suit was instituted the defendant Carrie Rouse was in default or the condition of the mortgage had been broken. The suit was prematurely instituted. Plaintiff contends that the defendant breached the covenants of the mortgage by allowing subsequent liens upon the property. All of the junior lien claimants were made parties to the suit and defaulted. It is plain that the plaintiff was not injured in any way on account of the junior liens. Equity will not allow a mortgagee to foreclose a mortgage for a mere technical default. The foreclosure of a mortgage is equitable in its nature, although based on legal rights, and it is

the province of the court to see to it that a party invoking its relief shall have dealt fairly before relief is given. 2 Jones on Mortgages (8th Ed.), § 1502; *Germania Life Ins. Co. v. Potter,* 124 App. Div. 814 (109 N. Y. S. 435).

Counsel for plaintiff cites and relies upon the case of *Churchill v. Meade,* 88 Or. 120 (171 P. 565), where a mortgage provided that the mortgagor should reduce a prior encumbrance and that failure to perform any agreement should authorize immediate foreclosure. Receipt from the administrator of the estate which owned the prior encumbrances was improvised, but no money paid therefor. Mr. Justice BURNETT stated:

"Each of these defaults constitutes a breach of the covenants of their mortgage and by its terms the holder thereof is entitled to foreclose the same for the full amount due upon the note in their agreements set out therein."

The facts of that case were entirely different from those in the present suit. That was a covenant to make payment upon a prior mortgage which would increase the security of the mortgagee and is just as essential as payment of a part of the mortgage when due. The facts of this case in regard to junior liens are on an entirely different basis. The case is not in point.

The decree of the lower court finding that the mortgage should be foreclosed on account of the nonpayment of taxes is reversed and the suit dismissed.

RAND, C. J., CAMPBELL and BAILEY, JJ., concur.