Argued September 13; affirmed November 5, 1935

# ROUSE *v.* EQUITABLE SAVINGS & LOAN ASSOCIATION ET AL.

(50 P. (2d) 763)

*Wendell K. Phillips*, of Portland (Sheppard & Phillips, of Portland, and Harley W. Allen, of Walla Walla, Washington, on the brief), for appellant.

*Robert F. Maguire*, of Portland (Maguire, Shields & Morrison, of Portland, on the brief), for respondent W. H. Maas.

*Cake & Cake* and *Jaureguy & Tooze*, all of Portland, for respondent Equitable Savings & Loan Association.

*Sims & Sims* and *Harry George, Jr.*, all of Portland, for respondent Gibraltar Finance Corporation.

BELT, J. This is an action to recover damages on account of an alleged conspiracy of the defendants to cheat and defraud plaintiff out of certain real property occupied by her as a home in the city of Portland. Plaintiff alleges that as a result of such conspiracy and fraud a mortgage foreclosure suit was wrongfully and maliciously instituted and her property sold to satisfy an indebtedness not due. Plaintiff demands recovery for the value of her home alleged to be reasonably worth $5,500, less the amount derived from the execution sale ($526.16); for $1,500 as special damages; and for $50,000 punitive damages. The trial court directed a verdict in favor of the defendants and, from the judgment entered in accordance therewith, the plaintiff appeals.

The facts out of which this action arose are complicated. On February 27, 1926, George Rouse, an unmarried man, borrowed $1,200 from the defendant Equitable Savings & Loan Association, hereinafter referred to as the Equitable, as evidenced by his note

and mortgage of even date therewith. The note for $1,629.12, representing principal and interest, was payable in monthly installments of $16.97. Subsequently George Rouse married the plaintiff herein who, through mesne conveyances, on February 16, 1929, acquired the legal title to the property, subject to the above mortgage. At this time the plaintiff and her husband were engaged in selling real estate on commission for the Portland Mortgage Company, a subsidiary corporation of the Equitable. It was understood and agreed that the commissions thus earned should, upon assignment thereof to the Equitable, be applied in payment of the monthly installments due, also taxes and insurance. The pass book of the plaintiff was for convenience left at the office of the Equitable. Commissions on sales made by plaintiff and her husband were not due until a certain percentage of the purchase price had been paid. If the testimony of the plaintiff is to be believed, she was very persistent in her efforts to ascertain the status of her account, particularly as to whether she was in default in her monthly payments. However, the numerous letters of Mr. Schramm, secretary of the Equitable and of its subsidiary the Portland Mortgage Company, tend to show that plaintiff was constantly being advised that she was in default in her monthly payments and had permitted taxes to become delinquent in violation of the terms of the mortgage.

On February 3, 1932, the Equitable sold and assigned the note and mortgage to the defendant W. Maas, but the assignment was taken in the name of the Gibraltar Finance Corporation, hereinafter referred to as the Gibraltar. The note was endorsed "without recourse". The defendant C. A. Lucas, a mortgage broker, represented Maas in this transaction. It seems that the Rouses were indebted to Maas in the approxi-

mate sum of $1,400, as evidenced by an unsecured promissory note, and the latter thought his claim could best be secured by acquisition of the mortgage. Prior to the purchase of the mortgage, the Gibraltar obtained a statement from the Equitable purporting to show that the plaintiff was in default. On February 9, 1932, the Gibraltar commenced foreclosure proceedings. The plaintiff herein contested such suit but a decree of foreclosure was rendered and, on October 19, 1932, the property was purchased by John Boese on execution sale for the amount decreed to be due, $526.16. The sale was confirmed on December 7, 1932. In the meantime, however, the plaintiff herein appealed to this court from the decree of foreclosure but filed no supersedeas bond. On appeal the decree was reversed as this court found that the Equitable had failed to apply two payments aggregating $101.82 upon the mortgage indebtedness, and that had such payments been so applied the plaintiff herein would not have been in default (*Gibraltar Finance Corporation v. Rouse,* 145 Or. 89 (25 P. (2d) 559)).

It is claimed by defendants that Boese bid in the property at the foreclosure sale at the solicitation of the Rouses and in their behalf. The plaintiff denies that she solicited Boese or had any understanding with him to so act. Relative to this matter, the record discloses the following part of plaintiff's testimony on direct examination:

"Q. At the time you were there and the bidding was going on, did you have any agreement with anyone to purchase the property for you? A. Yes,—no, not for me, he bought it in,—if I could get the money.

"Q. Tell the jury what that was? A. John Boese bought the property in, and if I could get that money and pay him, then I could have my property back, and he bid the property in."

On cross examination:

"Q. Didn't you make an agreement with him that you would give him twenty-five dollars or thirty dollars if he would buy the property for you? A. If I could get the money to pay him back, then I could have the property.

"Q. The question I asked you was whether you got Mr. Boese to buy the property in for you. 　*　*　* A. Oh, no."

On re-cross examination:

"The Court: And you had some arrangement with Mr. Boese regarding his purchasing the property at the foreclosure sale? The witness: No, I didn't, judge.

"The Court: You say you did not? The witness: No, I did not.

"The Court: Well, what was your testimony about that? The witness: Well, Mr. McCarthy, you see, promised to buy it in, and when I went to see him on Saturday afternoon, he told me he would not have the money and he wouldn't buy it in, and I thought if I could get somebody that I could trust, then if I could get the money I could pay them back, if some honest person would buy it in and wouldn't want to try and get more than they paid for it,—Mr. Boese is an old man, and he is honest, and I felt that if he had it I could come near—he wouldn't—well, he would,— just somebody that wouldn't take my home, you know."

It is observed that the plaintiff endeavored to have Loyal H. McCarthy, her attorney in the mortgage foreclosure proceedings, become a purchaser at the foreclosure sale in her behalf, but that he refused to do so.

Boese testified that George Rouse came to see him and asked if he did not want to buy a mortgage. He further testified that when he became a purchaser at the sale he thought he "was buying a mortgage".

The Rouses were indebted to McCarthy for legal services performed. At the solicitation of the Rouses, McCarthy procured an assignment of a judgment ob-

tained by the Gisnells in an action for fraud against the Rouses. The amount of such judgment was about $1,200, but McCarthy was able to purchase the same for $200. It is conceded that McCarthy held this judgment in trust for the plaintiff but it was, by virtue of an agreement, subject to the amount which McCarthy had paid the Gisnells and also for attorney fees earned and to be earned. The object of the Rouses in having McCarthy acquire the assignment of the judgment was to enable him to redeem the property sold under the foreclosure decree. Pursuant to agreement, McCarthy proceeded to redeem. Thereupon a suit was instituted by the Rouses and Boese to enjoin McCarthy from so doing, as a dispute had arisen concerning the amount of the Rouse indebtedness to McCarthy. The Rouses contended and McCarthy conceded that the judgment acquired by the latter was held in trust for the plaintiff. The injunction suit was dismissed and, on January 20, 1933, McCarthy did redeem the property from Boese.

After the supreme court had reversed the foreclosure decree and the property had been redeemed from Boese, McCarthy commenced action against the Gibraltar Finance Corporation and obtained judgment against it for the amount paid for redemption of the property, together with interest thereon. In the above action McCarthy tendered into court his sheriff's redemption certificate and the same was cancelled.

When the foreclosure decree was reversed on appeal, the plaintiff herein was awarded a judgment for costs. This judgment was assigned to William Berg, Jr., who had execution issued and served notice of garnishment on the plaintiff herein. She made a return to the effect that she had in her possession a certain sum of money then owing to the Gibraltar under the terms of a mortgage. This amount was paid to the sheriff who

remitted the same to her judgment assignee who thereupon satisfied the judgment. Thereafter the plaintiff herein commenced action against the Gibraltar for failure to satisfy her mortgage. A voluntary nonsuit was taken in such case, as the defendant therein had no beneficial ownership in the mortgage. Plaintiff was not to be stopped as the same kind of action was thereafter commenced against defendant W. H. Maas and a favorable judgment obtained. In these actions plaintiff alleged that she was the owner of the property covered by the mortgage. On the day of the trial, however, the plaintiff amended her complaint to the effect that she was the "assignee of the property", whatever that means.

While there have been many ramifications of this legal controversy and the facts are complicated, the vital issue in the instant action is simple and direct. Has plaintiff been deprived of her property through the fraud and conspiracy of the defendants? In the complaint it is charged that the defendants, prior to the third day of February, 1932, entered into a conspiracy to cheat and defraud the plaintiff out of her home. The plaintiff alleges, in substance, that, pursuant to such conspiracy, the defendants (1) failed and refused for a long period of time to advise her of the condition of her account and as to whether she was in default under the terms of the mortgage; (2) represented to plaintiff on or about January 16, 1932, that the mortgage was in good standing and that she had sufficient earned commissions to take care of all obligations thereunder; (3) assigned, without consideration, the mortgage to the Gibraltar for the purpose of foreclosure, knowing at said time that the plaintiff was not in default; (4) wrongfully and maliciously prevailed upon the Gibraltar to institute foreclosure

proceedings and had the property sold to satisfy a mortgage not due.

We concur in the view of the learned trial judge that there is no evidence tending to establish the charge of conspiracy. The only transactions in which respondents participated are: (1) The assignment of the mortgage from the Equitable to the Gibraltar on February 3, 1932; (2) the payment by the Gibraltar to the Equitable of the amount which the latter represented as being due on the mortgage; (3) the refunding by the Equitable to the Gibraltar on August 24, 1932, of the difference between the amount paid to the Equitable and the amount which was adjudicated to be due on the mortgage. We can make no reasonable deductions from these transactions that any conspiracy to defraud existed. The Equitable certainly had the right to sell the mortgage and the Gibraltar was equally within its rights in purchasing the same. Furthermore, we think no reasonable inference of wrong-doing can be drawn from the conduct of the Equitable in refunding to the Gibraltar the amount due it. It was its plain legal and moral duty so to do when it appeared that there was less due on the mortgage than represented. None of the respondents excepting the Equitable participated in the application of payments or representations as to the status of plaintiff's account. Likewise the Equitable had no connection with the plaintiff after the assignment of the mortgage. In these transactions the Equitable and the Gibraltar were acting independently of each other. What motive could the Equitable have in entering into a conspiracy with the Gibraltar resulting in the foreclosure of the mortgage by the latter? That the Equitable and the Gibraltar had probable cause for believing that plaintiff was in default is conclusively established by the finding of the trial court in the fore-

closure suit, notwithstanding the reversal of the decree on appeal: *Crescent Live Stock Co. v. Butchers' Union Slaughter House*, 120 U. S. 141 (30 L. Ed. 614, 7 S. Ct. 472); 38 C. J. 419. Hence we may well conclude that there was no abuse of the processes of the courts in the prosecution of such suit. It is not necessary that the charge of conspiracy be established by direct and positive evidence, but certainly it must be based upon something more substantial than mere suspicion.

■ It is urged that, even though it be held that there was no conspiracy, the action should not be dismissed as to the defendant, the Equitable. In our opinion the fallacy of this contention is that, if the charge of conspiracy be eliminated, there is no reasonable ground for holding the Equitable liable for the damages of which the plaintiff complains. It had nothing whatever to do with the sale of plaintiff's property under the foreclosure decree. Neither is there any evidence tending to support the allegation in the complaint that the Equitable sold and assigned the mortgage for the purpose of having it foreclosed. We agree that conspiracy is not, as was said in *Keller v. Commercial Credit Co.*, 149 Or. 372 (40 P. (2d) 1018, 96 A. L. R. 1235), the gravamen of the complaint. Yet where there has been a failure in the proof of conspiracy, no recovery can be had against the Equitable unless it was guilty of a tort resulting in plaintiff's damage. The Equitable alone could not have committed the wrong of which the plaintiff complains. Assuming that plaintiff was damaged, the Equitable could have been held liable only by showing a conspiracy in which it joined.

Let us further assume that the Equitable orally represented to plaintiff that she was not in default on her mortgage indebtedness, although there are 58 letters in evidence to the contrary—one dated January 4,

1932, and another January 25, 1932, just prior to the approximate date the alleged conspiracy was formed. Can fraud be predicated upon such representation? Plaintiff alleged that this representation was false and that she was deceived thereby although it has been adjudicated, as a matter of fact, that she was not in default. If the Equitable made such representation it would seem, in the light of the finding of this court in the mortgage foreclosure appeal, that it was telling the truth. Fraud must be based upon a false statement and not upon the truth.

■ Has plaintiff sustained damages as a result of the alleged wrongful acts of the defendants? Has she lost her home? No sheriff's deed has been delivered conveying her property (*Dray v. Dray*, 21 Or. 59 (27 P. 223)) and, at all times mentioned herein, she has been and is in possession of the property. We are not dealing with a case wherein the purchaser at the execution sale was a stranger to the proceeding: Freeman on Judgments (5th Ed.) § 1174; 16 R. C. L. 27; 35 C. J. 82. We think Boese became a purchaser for and on behalf of plaintiff. If such conclusion is erroneous then certainly, under the undisputed evidence, the redemptioner McCarthy was acting as her agent. She alleged and McCarthy conceded that he held the redemption certificate as trustee for plaintiff. When the redemption certificate was tendered into court and cancelled, McCarthy released whatever interest he had in the property. Plaintiff is in no different position than she would be had she as judgment debtor personally purchased the property at execution sale or redeemed the same. Under such circumstances the effect of the sale would terminate and title would be restored to the debtor: Oregon Code 1930, § 3-506. Hence we conclude that, so far as the record before us discloses,

plaintiff has never been divested of the legal title to the property in question. She has sustained no damages which can afford a basis for this action. True, plaintiff was obliged to defend in the mortgage foreclosure suit prematurely commenced, but she was awarded costs on appeal and counsel for the plaintiff, for good reason, concede that no action for malicious prosecution of the foreclosure suit can be maintained.

In view of the above conclusion that there is no evidence of conspiracy, fraud, or damage, it is unnecessary to consider the contentions of counsel relative to the. measure of damages or the election of remedies.

The judgment of the lower court is affirmed.

BEAN and ROSSMAN, JJ., not sitting.