### CONTINENTAL FEDERAL SAVINGS AND LOAN ASSOCIATION, a corporation, Appellant,

v.

### Louis B. FETTER, Jr. and Billie C. Fetter, husband and wife, and Charles P. Liddell and Irma I. Liddell, husband and wife, Appellees.

No. 48887.

Supreme Court of Oklahoma.

May 24, 1977.

Spradling, Stagner, Alpern & Friot by John T. Spradling, Stephen P. Friot, T. Scott Spradling, Oklahoma City, for appellant.

Heiple Law Offices, Inc. by H. L. Heiple, Norman, for appellees.

McAfee, Taft, Mark, Bond, Rucks & Woodruff by Stewart W. Mark, Frank D. Hill, Rebecca O. Marshall, Oklahoma City, for Oklahoma Savings League, amicus curiae.

Elliott, Woodard & Rolston by Ted R. Elliott, Oklahoma City, for Local Federal Savings & Loan Ass'n.

Gable, Gotwals, Rubin, Fox, Johnson & Baker by G. Ellis Gable, Richard W. 'Gable, Tulsa, for State Federal Sav. and Loan Ass'n.

Morehead, Savage, O'Donnell, McNulty & Cleverdon by Jacob L. Morehead, Tulsa, for Mid-America Federal Sav. & Loan Ass'n.

Houston & Klein by Ed Jacoby, Tulsa, for Sooner Federal Sav. & Loan Ass'n.

Northcutt, Northcutt, Ellifrit, Raley, Gardner & Northcutt by C. D. Northcutt, Ponca City, for Frontier Federal Sav. & Loan Ass'n.

Park, Nelson & Caywood by Robert B. Park, Chickasha, for First Federal Sav. & Loan Assn. of Chickasha.

Horsley, Epton & Culp by Dudley H. Culp, Wewoka, for First Federal Sav. & Loan Ass'n.

Berry, Murphy & Osborn by Everett E. Berry, Stillwater, for Stillwater Sav. & Loan Ass'n.

Fogg, Fogg & Howard by Rupert M. Fogg, El Reno, for El Reno Federal Sav. & Loan Ass'n.

Godlove, Joyner, Godlove, Garrett, Meyers & Davis, Inc. by Ernest F. Godlove, Lawton, for Home Sav. & Loan Ass'n.

Hemry & Hemry by Jerry L. Hemry, Oklahoma City, for Mut. Federal Sav. & Loan Ass'n.

HODGES, Chief Justice.

This is an appeal by Continental Federal Savings and Loan Association, appellant, (Continental Federal) from a judgment denying recovery on a note and foreclosure of a mortgage.

On August 8, 1972, appellees, Louis B. Fetter, Jr. and Billie C. Fetter, executed a promissory note in the amount of $30,400 with interest at the rate of 7½% per annum, payable to Continental Federal in monthly installments of $212.58, beginning on September 5, 1972. To secure payment of the note, the Fetters mortgaged certain real property in Cleveland County to Continental Federal. The mortgage, a standardized printed form prepared by Continental Federal, was delivered and properly filed of record in the office of the county clerk of Cleveland County.

Fetter called the Liddells to ask if they would like to purchase the Fetters' home on approximately October 17, 1973. Liddell called Continental Federal on October 22,

1973, for an assumption statement which was furnished. The assumption statement reflected a transfer fee of $300.76. Continental Federal had a general policy of requiring payment of a transfer fee before it granted consent to a transfer of property securing payment of Continental Federal's loan, although neither the note nor the mortgage required payment of a transfer fee as a condition precedent to granting consent. The usual policy was that the vendee paid one hundred dollars if the mortgage interest rate was equal to or greater than the prevailing interest rate or the greater of one hundred dollars or one percent of the unpaid loan balance if the mortgage rate was below the market rate or if the loan exceeded $10,000. On approximately the First of November, 1973, Liddell gave Fetter a check for $500 and Fetter signed and delivered a deed to the property to Liddell. The mortgaged premises were conveyed without payment or tender of the transfer fee and without the written consent of Continental Federal.

Liddell, through his attorney, wrote a letter to Continental Federal on November 13, 1973, tendering an assignment of trust funds signed by the Fetters and Liddells whereby the escrow accounts were transferred to the Liddells; a financial statement for Liddell; a loan assumption agreement apparently prepared by counsel for appellees specifically refusing to pay any transfer fee amounting to one percent of the unpaid balance of the loan; and a check payable to Continental Federal covering all outstanding payments and charges except the transfer fee. The Liddells also offered to furnish all documents and do all things necessary to afford reasonable assurances regarding payment of the note. This tender was refused by Continental Federal on November 19, 1973, and the appellees' attorney was advised that no further payments would be accepted until the transfer fee was paid and that foreclosure proceedings would be initiated.

On December 7, 1973, Continental Federal wrote Liddell and informed him of Continental Federal's election to accelerate the

maturity of the note under paragraph seven of the mortgage,[1] declared the full amount of the loan due and payable no later than December 17, 1973, and notified the Liddells if the loan remained unpaid, a foreclosure suit would be commenced. Continental Federal was notified December 13, 1973, that a savings account containing all amounts currently due had been established in the name of Liddell and Continental Federal and Liddell offered to pay a reasonable transfer fee. Liddell visited a representative of appellant, seeking a waiver or substantial reduction in the transfer fee on the basis that it was excessive and not related to the work involved in transferring the loan. Liddell did not object to Continental Federal's right to withhold consent to the transfer as long as the fee was reasonable when consent was given. The reduction was refused. At no time was any further information requested from Liddell and the refusal to transfer was apparently based solely on his refusal to pay the transfer fee. Continental Federal accelerated the mortgage indebtedness, and when payment was not made, it brought suit to foreclose the mortgage.

The appellees resisted the foreclosure action on the grounds that the transfer of the mortgaged property without the written consent of Continental Federal was not a proper basis for acceleration of the balance due on the note and foreclosure of the mortgage, and that Continental Federal

was not entitled to require as consideration for its consent to the transfer payment of a fee equal to one percent of the outstanding loan balance where no provision for payment was contained in either the note or the mortgage. The deposition testimony of its president disclosed that the approximate cost to Continental Federal of all transactions necessary to accomplish the transfer was $100, and that the cost of transfer bore no relationship to the size of the loan.

After discovery, depositions stipulation as to facts, and consideration of briefs, the trial court found the transfer fee to be unreasonable and rendered summary judgment for appellees on Continental Federal's petition on July 31, 1975,[2] denying foreclosure, denying judgment on the note, and granting appellees a $5,000 attorney fee. A timely motion for new trial was overruled on September 2, 1975, and this appeal was lodged on September 15, 1975.

The legal proposition for consideration on appeal is a case of first impression. It concerns whether appellant had the right to accelerate the mortgage and foreclose, based on the language contained in the mortgage because of failure of appellees to pay the transfer fee. Although Continental Federal argues that its authority to require the payment of a transfer fee was derived from an acceleration clause in the mortgage, neither the note or the mortgage contained a provision requiring payment of a transfer fee. It is argued by amicus

1. The pertinent provision of the mortgage commonly known as a "due on sale" clause provides:

"The conveyance or sale of the mortgaged premises without the written consent of mortgagee shall entitle mortgagee, at its option, to declare the entire indebtedness due and payable forthwith, and mortgagee shall be entitled to foreclose this mortgage if the balance is not paid."

2. The trial court found:

"That the subject mortgage is a valid legal and enforceable instrument under which the plaintiff had a right to either approve or deny the transfer of its loan from the defendants Fetter to the defendants Liddell.

"That the plaintiff, in considering a request to transfer, can require payment by the proposed transferee of the reasonable costs of investigation and paper work, which the Court

finds, in this case, were $100, but had no right to demand, as a condition of such transfer, the payment of a charge of $300.76, which the court finds was, and is, unreasonable, arbitrary, capricious, inequitable and unenforceable and constituted no proper basis for accelerating the mortgage debt.

"While plaintiff's requirements appear reasonable as a general policy and have been, with few exceptions, fairly and nondiscriminatorily applied to all 'conventional' loans excepting as a class only transfers involving families and deaths, this case exemplifies one of the policy inequities.

"There is no evidence of any malice on the part of the plaintiff, nor of any interference with the defendants' right to contract, except as consistent with plaintiff's right to approve or deny the transfer or assumption."

curiae that the issue on appeal is the validity of the due on sale clause in the mortgage. However, the trial court found that the mortgage was a valid and enforceable instrument[3] and the validity of the acceleration clause was never challenged by the appellees.[4] Apart from the dispute as to Continental Federal's application of paragraph seven of the mortgage,[5] there is no dispute as to the validity of the mortgage.

Acceleration clauses are bargained-for elements of mortgages and notes to protect the mortgagee from risks connected with transfer of the mortgaged property. The underlying rationale for an acceleration clause is to insure that a responsible party is in possession, to protect the mortgagee from unanticipated risks, and to afford the lender the right to be assured of the safety of his security.[6] How-

3. See note 2, id.

4. No jurisdiction has held "call clauses" to be invalid per se, and they have been enforced and found unenforceable by the various state courts in a rather patchwork application of equitable principles based on essentially five basic rationales: (1) a doctrine of strict construction requiring all conditions for acceleration be met before acceleration is permitted; (2) a requirement that the mortgagee justify his refusal to consent to the purchase before acceleration is permitted; (3) acceleration permitted based on the premise the mortgagee has the right to protect the security unless it would be inequitable under the circumstances; (4) refusal to permit acceleration if no harm to the mortgagee would result from the transfer; (5) approval of acceleration clauses as a reasonable business practice and not as an unreasonable restraint on alienation, unless inequitable under the circumstances.

Jurisdictions applying the doctrine of strict construction requiring all conditions for acceleration be met before acceleration is permitted include:

*Shalit v. Investors Savings & Loan Association,* 101 N.J.Super. 283, 244 A.2d 151 (1968); *Chapman v. Ford,* 246 Md. 42, 227 A.2d 26 (1967); *Merriam v. Leeper,* 192 Iowa 587, 183 N.W. 134 (1921); *Sale v. Meletus,* 3 Alaska 474 (1908); *Tidwell v. Wittmeir,* 150 Ala. 253, 43 So. 782 (1907); *Home Federal Savings & Loan Association v. English,* 249 So.2d 707 (Fla.App.1971).

Jurisdictions requiring that mortgagee justify refusal to consent to purchase before acceleration permitted include:

*Sanders v. Hicks,* 317 So.2d 61 (Miss.1975); *Tucker v. Pulaski Federal Savings & Loan Ass'n,* 252 Ark. 849, 481 S.W.2d 725 (1972); *Baltimore Life Insurance Co. v. Harn,* 15 Ariz.App. 78, 486 P.2d 190 (1971); *Clark v. Lachenmeier, 237 So.2d 583 (Fla.App.1970).*

Jurisdictions holding refusal to permit acceleration if no harm to mortgagee would result from the transfer:

*Sanders v. Hicks,* 317 So.2d 61 (Miss.1975); *Tucker v. Lassen Savings & Loan Association,* 12 Cal.3d 629, 116 Cal.Rptr. 633, 526 P.2d 1169 (1974); *Walker Bank & Trust Co. v. Neilson,* 26 Utah 2d 383, 490 P.2d 328

(1971); *Gibraltar Finance Corp. v. Rouse,* 145 Or. 89, 25 P.2d 559 (1933); *Clark v. Lachenmeier,* 237 So.2d 583 (Fla.App.1970).

Jurisdictions holding acceleration permitted based on the premise the mortgagee has the right to protect the security unless it would be inequitable under the circumstances:

*First Commercial Title, Inc. v. Holmes,* 550 P.2d 1271 (Nev.1976); *Century Federal Savings & Loan Ass'n of Bridgeton v. Van Glahn,* 144 N.J.Super. 48, 364 A.2d 558 (1976); *Mutual Federal Savings & Loan Association v. Wisconsin Wire Works,* 71 Wis.2d 531, 239 N.W.2d 20 (1976); *Mutual Federal Savings & Loan Association v. American Medical Services,* 66 Wis.2d 210, 223 N.W.2d 921 (1974); *Mutual Federal Savings & Loan Association v. American Medical Services, Inc.,* 66 Wis.2d 210, 223 N.W.2d 921 (1974); *Gunther v. White,* 489 S.W.2d 529 (Tenn.1973); *A. R. Clark Investment Co. v. Green,* 375 S.W.2d 425 (Tex.1964); *Medovoi v. American Savings & Loan Ass'n,* 133 Cal.Rptr. 63 (Cal. App.1976); *Stith v. Hudson City Savings Institution,* 63 Misc.2d 863, 313 N.Y.S.2d 804 (1970).

Jurisdictions holding approval of acceleration clauses as a reasonable business practice and not as unreasonable restraint on alienation unless inequitable under the circumstances:

*Miller v. Pacific First Federal Savings & Loan Association,* 86 Wash.2d 401, 545 P.2d 546 (1976); *Baker v. Loves Park Savings & Loan,* 61 Ill.2d 119, 333 N.E.2d 1 (1975); *Malouff v. Midland Federal Savings & Loan Association,* 181 Colo. 294, 509 P.2d 1240 (1973); *Baltimore Life Insurance Co. v. Harn,* 15 Ariz. App. 78, 486 P.2d 190 (1971) *cert. den.* 108 Ariz. 192, 494 P.2d 1322 (1972); *People's Savings Association v. Standard Industries, Inc.,* 22 Ohio App.2d 35, 257 N.E.2d 406 (1970).

See also: Annot., "Validity, Construction and Application of Clause Entitling Mortgagee to Acceleration of Balance Due in Case of Conveyance or Transfer of Mortgaged Property." 69 A.L.R.3d 713 (1976).

5. See note 1, supra.

6. *First Commercial Title, Inc. v. Holmes,* 550 P.2d 1271 (Nev.1976).

ever, an action to accelerate and foreclose a mortgage is an equitable proceeding, and the equitable powers of the court will not be invoked to impose an extreme penalty on a mortgagor with no showing that he has violated the substance of the agreement.[7]

There are no Oklahoma cases involving either due on sale or due on encumbrance clauses or payment of transfer fees pursuant to real estate mortgages. *Ray v. Oklahoma Furniture Manufacturing Co.,* 170 Okl. 414, 40 P.2d 663 (1935) contains the following provision in the promissory note covering fixtures;

"This note shall at the option of the holder, become at once due and payable if any change takes place in the ownership of the business of the maker * * * or if any stock of goods or fixtures be damaged by fire, or if maker * * * or either of them become insolvent, or if I fail to pay any other indebtedness to the payee hereof at maturity, or if I be sued by any other creditor, or if a chattel mortgage be placed on his stock of goods or fixtures . . ."

This Court held the acceleration clause was for the protection of the plaintiff and was not void as being contrary to public policy or in restraint of trade.[8] It did state, however, that agreements restricting the sale of property must be reasonable to be valid. At page 665 the Court said:

" . . . The rule invalidating contracts in restraint of trade does not include every contract of an individual by which his right to dispose of his property is limited or restrained. * * * It seems to be clear that, like agreements in restraint of trade, agreements restricting the use or sale of property must be reasonable to be valid. To such an agreement is likewise applicable the usual test of reasonableness, viz., whether the restriction imposed on one party is greater than is necessary for the protection of the other." Further, it is said in 6 R.C.L. c. 194, p. 789: "No better test can be applied to the question whether a particular contract is reasonable than by considering whether the restraint is such only as to afford a fair protection to the interest of the party in favor of whom it is given, and not so large as to interfere with the interests of the public. Whatever restraint is larger than the necessary protection of the party can be of no benefit to either; it can be only oppressive, and if oppressive it is, in the eye of the law, unreasonable. It seems that the extent of the restraint imposed by the contract

---

7. See *Baltimore Life Ins. Co. v. Harn,* 15 Ariz. App. 78, 486 P.2d 190, 193 (1971).

8. In *Medovoi v. American Savings & Loan Ass'n,* 133 Cal.Rptr. 63, 71 (Cal.App.1976) the rationale for the due on sale clause is explained:

"The due-on-sale provisions which commonly appear on printed trust deed forms constitute acknowledged restraints designed to protect the justifiable interests of the parties. The enforceability of the due-on-sale provision is supported by sound business reasons. "[1b] . . . First, a substantial loan ordinarily is not obtained for the asking. Lenders run the risk that security may depreciate in value, or be totally destroyed. This risk of loss is reduced in the lender's viewpoint if the borrower is known to be conscientious, experienced and able. Often, as here, a trust deed requires the borrower to maintain the property in good repair, secure and keep adequate insurance in force, satisfy liens, taxes and other encumbrances and in other ways to protect the security. If a borrower were able to sell the security without concern for the debt, he may take the proceeds of the sale, leaving for parts unknown, and the new owner of the property might permit it to run down and depreciate. . . Secondly, loan agreements frequently permit a borrower to pay off a loan before it is due. When interest rates are high, a lender runs the risk they will drop and that the borrower will refinance his debt elsewhere at a lower rate and pay off the loan, leaving the lender with money to loan but at a less favorable interest rate. On the other hand, when money is loaned at low interest, the lender risks losing the benefit of a later increase in rates. As one protection against the foregoing contingency, a due-on-sale clause is employed permitting acceleration of the due date by the lender so that he may take advantage of rising interest rates in the event his borrower transfers the security. This is merely one example of ways taken to minimize risks by sensible lenders." (*Cherry v. Home Sav. & Loan Assn, supra,* 276 Cal.App.2d 574 at pp. 578–579, 81 Cal.Rptr. 135, 138).

would be of some importance in determining its reasonableness * * *."

There are Oklahoma cases dealing with acceleration clauses in real estate mortgages which involve acceleration for failure to provide insurance [9] or for commission of waste. In *Lawton v. Lincoln*, 200 Okl. 182, 191 P.2d 926 (1948), a real estate mortgage foreclosure case involving waste, the Court acknowledged that acceleration clauses in a mortgage were not objectionable as being in the nature of a penalty or forfeiture, although there are cases where it "becomes closely akin thereto" and equity will relieve against operation of an acceleration clause where the conduct of the mortgagee has been unconscionable or inequitable. In a later case, *Murphy v. Fox*, 278 P.2d 820, 826 (Okl.1955), the Court said:

"This Court has adhered to the principle that in a suit of equitable cognizance to foreclose a real estate mortgage the trial court may refuse foreclosure where there has been a technical default due to a mistake or mere venial inattention and of no damage to the mortgage security or prejudice to the mortgagees."

■ Foreclosure of a real estate mortgage is an equitable action, and it is within the province of the court exercising its equitable power to see that the party seeking equity shall have dealt fairly before relief is given.[10]

■ No allegation was made, nor was any evidence presented, to show the mortgagee's security was impaired. The deposition testimony of Continental Federal's president reflected that because payments had been tendered, and a savings account opened in the name of appellees and Continental Federal, the loan was not in jeopardy. Neither the mortgage nor the note contained a provision requiring payment of a transfer fee. The undisputed evidence was the actual transfer cost to Continental Federal was $100 and that comparable transfer figures for VA and FHA were $35. Printed contracts are interpreted most strongly against the party preparing the form.[11] The rule of strict construction against the drafter of the instrument is particularly applicable in the case of a contract prepared by an expert or experienced party,[12] and it has special force where it is sought to create and impose an obligation when none would otherwise appear.

■ We, therefore, find that it was unreasonable and inequitable for appellant to impose a one percent transfer fee as a condition precedent to giving its consent to transfer the mortgage because neither the note nor the mortgage contained such a provision; it was not a bargained-for element of the note and mortgage; it bore no relationship to the actual cost of transferring the mortgage, and there was no jeopardizing of mortgagee's security.

AFFIRMED.

LAVENDER, V. C. J., and IRWIN, BERRY, BARNES and DOOLIN, JJ., concur.

WILLIAMS, J., dissents.

---

**9.** *Mid-State Homes, Inc. v. Jackson*, 519 P.2d 472 (Okl.1974).

**10.** *Murphy v. Fox*, 278 P.2d 820 (Okl.1955).

**11.** 15 O.S.1971 § 170.

See *Harjo Gravel Co. v. Luke-Dick Co.*, 194 Okl. 537, 153 P.2d 112 (1944).

**12.** *Goodman v. Kelly*, 390 P.2d 244, 248 (Wyo. 1964); *Mills v. Hunter*, 103 Cal.App.2d 352, 229 P.2d 456 (1951).