MUTUAL FEDERAL SAVINGS & LOAN ASSOCIATION, Appellant, v. AMERICAN MEDICAL SERVICES, INC., and others, Respondents.*

*No. 205. Argued December 2, 1974.—Decided December 20, 1974.*
(Also reported in 223 N. W. 2d 921.)

* Motion for rehearing denied, with costs, on March 4, 1975.

212

For the appellant there were briefs by *Frisch, Dudek, Slattery & Denny,* attorneys, and *Edward A. Dudek, Robert D. Scott* and *James D. Friedman,* of counsel, all of Milwaukee, and oral argument by *Edward A. Dudek.*

For the respondents there was a brief by *Godfrey & Kahn, S. C.,* attorneys and *Gerald J. Kahn, James Ward Rector* and *William B. Graves,* of counsel, all of Milwaukee, and oral argument by *Gerald J. Kahn* and *Mr. Graves.*

ROBERT W. HANSEN, J.   The validity of a "due on sale" provision in a mortgage was upheld in the *Wire Works Case.*[1]   As to an acceleration clause, phrased in the exact language of the provision involved in the case before us, this court held such " 'due . . . if . . . convey[ed] away . . . or if the title thereto shall become vested in any other' " clause not to be against public policy and held it to be ". . . enforceable as a contractual condition of the note and mortgage."[2]   However, it also held that the invocation of the acceleration clause must be "in accord with equitable principles," with the trial court to determine whether, ". . . in accordance with the equitable standards that are imperative upon the foreclosure of a mortgage, . . ."[3] foreclosure under a "due on sale" provision will be permitted.

In this case the trial court balanced the equities involved and concluded that: "It would be inequitable under the circumstances to decree foreclosure of the mortgages." We find that conclusion or holding amply

[1] *Mutual Federal Savings & Loan Asso. v. Wisconsin Wire Works* (1973), 58 Wis. 2d 99, 205 N. W. 2d 762.

[2] *Id.* at page 110.

[3] *Id.* at page 112.

supported by the record in this case, and affirm it, specifically approving the balancing of equities approach used by the trial court in reaching it. As this court made clear in the *Wire Works Case,* enforcement of "due on sale" clauses is not automatic, and ". . . [w]hether they may be utilized in a particular case is dependent upon the facts and whether the invocation of the acceleration clause would be inequitable under the circumstances." [4] In this record, and in the opinion of the trial court, we find three major factors that tip the scales of equity in favor of the mortgagor, and against the mortgage-forecloser. They are as follows:

I. *No impairment of security.* The trial court here held that the transfers of title here involved ". . . did not affect substantially the beneficial ownership of the mortgaged property or fall within the purpose of the mortgage restrictions upon transfer of title to the mortgaged premises." The trial court opinion set forth this conclusion as alone sufficient, not to establish the weight of the equities involved, but to constitute a condition precedent not met to the implementation of a "due on sale" provision in a mortgage. We do not go that far. While the *Wire Works Case* apparently viewed an acceleration clause as related to preservation of the security of the mortgage holder,[5] the decision does not make proof

[4] *Id.* at page 106.

[5] *Id.* at pages 106, 107, this court saying of decisions in other jurisdictions:

"The New York courts sanction the use of 'due on sale' acceleration clauses, but the mortgagee's option to accelerate the mortgage debt will be enforced only if it does so in good conscience and fairness to the mortgagor. . . .

"The Florida Court of Appeals has held that a mortgage foreclosure is an equity matter and that a mortgagee has a right to accelerate on the default of the mortgage conditions only if they are necessarily related to the preservation of the security. A Florida court will refuse to enter a foreclosure judgment when

of actual impairment of security a condition precedent to a foreclosure under the "due on sale" clause. However, an absence of impairment of security is a factor that a trial court may put on the scales in weighing the equities involved. Here the argument could be and is made that the transfers involved materially improved Mutual's security and enhanced its ability to collect the mortgage indebtedness. Without the funds which the building corporation was able to supply by reason of the merger effected, it appears questionable whether the nursing home could have continued in operation. At least the mortgage was then in default. When the nursing home was restored to a corporation exclusively engaged in the nursing home business, the basic purpose appears to have been to strengthen the viability of the nursing home operation conducted on the mortgaged premises. With timely payments of increased monthly installments replacing repeated defaults, we uphold the trial court's conclusion that there was here no substantial impairment of security sustained by the mortgagee by reason of the transfers made.

II. *Agreement not to foreclose.* The trial court here found that Mutual had ". . . agreed with Defendant

the acceleration of the due date would be unconscionable and its result would be inequitable and unjust. . . .

"The California Supreme Court . . . upheld this type of clause as a reasonable restraint on alienation, because it was designed to protect a justifiable security interest of the mortgagee. . . ."

Citing: *Blomgren v. Tinton* (1962), 33 Misc. 2d 1057, 225 N. Y. Supp. 2d 347; *Clark v. Lachenmeier* (Fla. App. 1970), 237 So. 2d 583, 584; *Coast Bank v. Minderhout* (1964), 61 Cal. 2d 311, 317, 38 Cal. Rptr. 505, 392 Pac. 2d 265.

*But see: Tucker v. Lassen Savings & Loan Asso.* (1974), 116 Cal. Rptr. 633, 639, 526 Pac. 2d 1169, holding ". . . a 'due-on' clause contained in a promissory note or deed of trust . . . can be validly enforced only when the beneficiary-obligee can demonstrate a threat to one of his legitimate interests sufficient to justify the restraint on alienation inherent in its enforcement. . . ."

River Hills Nursing Home, Inc., and West Side Bank to refrain from foreclosing the mortgages so long as the sum of $13,000 . . . was paid monthly," and that there ". . . has been no failure to make a payment required under the agreement not to foreclose." The reference is to a letter sent in 1965 by Mutual, by its president, to the West Side Bank stating that as long as the sum of $13,000 was paid monthly to Mutual it would forbear instituting foreclosure proceedings. Also, there was the endorsement by Mutual of a cashier's check purchased by River Hills II by which payment of $69,000 was made to Mutual and the agreement to forbear foreclosure was repeated. The trial court held the letter and check to constitute a three-party agreement binding Mutual not to foreclose in lieu of actual default and barring this action to foreclose under the acceleration clause. We need not, in balancing the equities involved, reach or review the trial court holding that all elements of a contractual agreement are met by the letter and endorsement on the check. We do hold that the agreement by Mutual to forbear instituting foreclosure proceedings as long as it received $13,000 per month, which amount it did receive, as contained in its letter to the bank and endorsement of the check, constitutes a substantial equitable consideration undergirding and supporting the trial court conclusion so that equity would not be served by permitting Mutual to foreclose where no default had occurred.

III. *Defense of laches.* In the *Wire Works Case,* this court held that an action to foreclose a mortgage is equitable in nature, and " '. . . the defense of laches may be raised against the mortgagee . . . .' " [6] This court has set forth the three essential elements of the defense of laches to be: ". . . Unreasonable delay in commencing the action; knowledge of the course of events and acquiescence therein; and prejudice to the

---

[6] *Id.* at pages 110, 111.

party asserting the defense. . . ." [7] Here we have a four to six-year delay in the seeking to enforce the acceleration provision. Assuming that Mutual can be found to have had knowledge of the transfers, this is certainly a sufficiently lengthy delay to meet the first element of the laches test. While actual notice at the time of transfers was not given to Mutual, the trial court held that Mutual ". . . knew or should have known, when it entered into the agreement not to foreclose, of the changes in legal title to the mortgaged premises . . . ." Constructive notice is enough.[8] The receipt of checks by Mutual, as far back as 1965, drawn on the building company's account; balance sheets submitted to Mutual; an insurance endorsement noting that title was changed to include the building company; along with the letter to the bank and the endorsement on the $69,000 check including the promise to forbear foreclosure, sufficiently support the trial court's conclusion that Mutual knew or should have known of the transfers of title made. We find the second element of the three-pronged test here met. As to the third element, prejudice to the defendant, while the trial court made no finding in this regard, the record clearly establishes that the respondents have become indebted to the West Side Bank for $250,000, have made the $13,000 monthly payments called for by the 1965 agreement and have made improvements to the nursing home at a cost of $275,000. The trial court found that mortgage interest

---

[7] *Estate of Korleski* (1964), 22 Wis. 2d 617, 622, 623, 126 N. W. 2d 492.

[8] *See: Johnson v. Blumer* (1924), 183 Wis. 369, 377, 197 N. W. 340, 198 N. W. 277, this court stating: ". . . Having held that the mortgagee and the plaintiff had no actual *or constructive* notice of the breach of warranty of Dahms until after the latter's death, it follows that the defense of laches herein cannot prevail." (Emphasis supplied.) *See also:* 30A C. J. S., *Equity,* p. 64, sec. 117, stating: ". . . Acquiescence cannot be imputed to one without actual *or constructive* knowledge of his own claim and of the infringement of it . . . ." (Emphasis supplied.)

rates have ". . . increased substantially during the period intervening between the agreement not to foreclose and the institution of this action." Permitting an acceleration of foreclosure proceedings, based on the "due on sale" provision, clearly would involve financial detriment or prejudice to respondents. So we find all three elements of laches present, and laches alone to be a sound basis for the trial court conclusion that "it would be inequitable under the circumstances to decree foreclosure of the mortgages."

To this balancing of the equities approach, followed by the trial court and followed by this court upon review, Mutual answers that equitable defenses are not available to respondents because their failure to give actual notice of transfers at the time made constitutes an intentional breach of contractual obligation, foreclosing resort to equity. We deal here with an option given Mutual to accelerate, not a promissory obligation by respondents to refrain from transferring.[9] Moreover, the equitable approach is dictated by the nature of the proceedings: an action to foreclose under a "due on sale" clause. It is the right of Mutual to proceed that must meet the test of equity, not just defenses raised by respondents. The claim that fraud is involved in the transfers made and that respondents, in consequence thereof, enter court with unclean hands is not supported by this record. The test for finding actionable fraud is certainly not here met.[10] Not only was fraud not pleaded, but reasonable

---

[9] As to distinction between a promissory right and an option right, see: *Marion v. Orson's Camera Centers, Inc.* (1966), 29 Wis. 2d 339, 138 N. W. 2d 733.

[10] See: *Estate of Demos* (1971), 50 Wis. 2d 262, 266, 184 N. W. 2d 117, this court stating: " 'To be actionable the false representation must consist, first, of a statement of fact which is untrue; second, that it was made with intent to defraud and for the purpose of inducing the other party to act upon it; third, that he did in fact rely on it and was induced thereby to act, to his injury or damage.' "

inferences drawn from this record cannot be accordioned into a foundation for a claim of fraud. Because the finding made by the trial court as to knowledge on the part of Mutual, actual or constructive, has been upheld by this court earlier in this opinion, there remains no basis for a claim that Mutual was here misled, or that Mutual would have foreclosed had it known of the transfers at the time they were made.[11] We find in this record no reason to conclude other than that the balancing of equitable considerations involved was here entirely appropriate and, in fact, required. Such balancing of the equities led the trial court to conclude that here "it would be inequitable under the circumstances to decree foreclosure of the mortgages." We uphold that finding, agreeing that it indeed would, and affirm the trial court judgment.

*By the Court.*—Judgment affirmed.

---

[11] *Laehn Coal & Wood Co. v. Koehler* (1954), 267 Wis. 297, 300, 64 N. W. 2d 823, quoting 37 C. J. S., *Fraud*, p. 271, sec. 29, stating: " 'It is generally held that whether the party would have acted in the absence of the representation is the test of whether or not he relied thereon; that to secure redress for false representation complainant must show that he would not have acted but for such representation; and that there can be no recovery for concealment where it does not appear that plaintiff would have acted otherwise had he known the facts; but that, if complainant was so influenced by misrepresentations that without them he would not have acted, sufficient reliance is shown to warrant recovery. . . .' "