MUTUAL FEDERAL SAVINGS & LOAN ASSOCIATION, a corporation, Respondent, v. WISCONSIN WIRE WORKS, a corporation, and another, Defendants: MEGAL DEVELOPMENT CORPORATION, a corporation, Appellant.

*No. 176 (1974). Submitted on briefs February 4, 1976.—*
*Decided March 2, 1976.*
(Also reported in 239 N. W. 2d 20.)

For the appellants the cause was submitted on the briefs of *James A. Urdan, John A. Casey* and *Quarles & Brady* of Milwaukee.

For the respondent the cause was submitted on the brief of *Jerry H. Friedland, James D. Friedman* and *Frisch, Dudek & Slattery, Ltd.,* all of Milwaukee.

BEILFUSS, J. In this appeal the appellant, Megal Development Corporation, contends accelerated foreclosure should not be permitted upon the "due on sale"[1] provision because the evidence established there has been no default in the payments on the note and mortgage and no impairment of security.

The basic facts are set forth in our prior opinion[2] and will not be repeated here in detail. A resumé of those facts and of the evidence received upon hearing on remand are as follows:

On February 21, 1966, the defendant Wisconsin Wire Works (Wire Works) entered into an agreement with the plaintiff-respondent Mutual Federal Savings & Loan Association (Mutual) whereby Mutual loaned Wire Works $350,000. Wire Works, in consideration thereof, gave Mutual a note and mortgage on real estate located in Appleton, Outagamie county. The note and mortgage called for interest at six and one-quarter percent and monthly payments of $3,003 for a period of fifteen years. The mortgage note and the mortgage by reference contained a "due on sale" clause designated "Consent Required to Transfer," which provided as follows:

---

[1] In this opinion we use the phrase "due on sale" and "consent required to transfer," the language of the note and mortgage, interchangeably.

[2] *Mutual Federal S. & L. Asso. v. Wisconsin Wire Works* (1973), 58 Wis. 2d 99, 205 N. W. 2d 762.

"It is expressly understood and agreed, that this mortgage note shall become due and payable forthwith at the option of the association if, at any time during this loan the promissors and mortgagors shall convey away said mortgaged premises or if the title thereto shall become vested in any other person or persons in any manner whatsoever, unless the consent in writing of the association herein, or its successors or assigns, is first obtained."

In January of 1967, Wire Works contacted Mutual about the possibility of selling the mortgaged premises to Kurz & Root Company. On March 2, 1967, Mutual agreed to approve the transfer to Kurz & Root upon the assumption of the note and mortgage, an increase in the interest from six and one-quarter percent to seven percent, and a one percent assumption fee. On March 15 Mutual was informed Kurz & Root had decided not to acquire the property.

On April 26, 1967, Wire Works sold the property to the defendant-respondent Megal Development Corporation (Megal) on a land contract. Megal agreed to pay the monthly payments called for by the note and mortgage and further agreed to pay such additional interest as Wire Works would be obligated to pay Mutual pursuant to the note. Megal also agreed to hold Wire Works harmless from additional interest and any other expenses Wire Works might incur as the result of the land contract being construed as a conveyance or other transfer under the terms of Mutual's note and mortgage and, further, to pay the unpaid balance if that became necessary.

On the same day, April 26, 1967, Megal received a check from Kurz & Root for $30,000 and one from the defendant Eugene B. Brownell, chairman of Kurz & Root, for $5,000 pending an agreement between Megal and Brownell to sell the property to Brownell. On July 31, 1967, Megal assigned to Brownell "all of its legal

and equitable title now or hereafter acquired, and rights to perfect and acquire title." In the amended agreement executed August 9, 1967, Brownell agreed to make the monthly payments of $3,003 on the note and mortgage and to assume the other obligations of Megal under its land contract with Wire Works. The land contract and the documents of the sale from Wire Works to Megal were recorded in the office of the Register of Deeds of Outagamie county in August of 1967, and the assignment from Megal to Brownell in October, 1968.

Upon the hearing on remand, the trial court, from the disputed evidence, found that Mutual did not have notice of the transfers from Wire Works to Megal and Megal to Brownell until November 20, 1969. On November 25, 1969, the board of directors of Mutual elected to declare the note and mortgage due. The parties were notified of this election. The action to foreclose was commenced in January of 1970.

At the first hearing on October 29, 1971, the trial court found ambiguity in the "due on sale" clause and that the transfer by Wire Works to Megal did not constitute a conveyance or vesting of the title in another within the meaning of the clause and dismissed the complaint.

The first appeal to this court followed. This court held the "due on sale" clause was not ambiguous that the acceleration provision was not against public policy and remanded the case to the trial court to determine the equitable defenses, if any.

At the remand hearing the trial court concluded Mutual was not guilty of laches. It found that there had been no default in the payments called for in the note and mortgage and concluded as a matter of law that impairment of security is not essential to a foreclosure when there is a breach in terms of the mortgage.

In its memorandum decision the trial court stated:

". . . the lending institution cannot be required to extend credit to parties other than the loan applicant and

that the consequent transfer of property involving others was in violation of the provisions of that mortgage and that that in itself is sufficient to allow the foreclosure action to proceed."

A judgment of foreclosure was entered in favor of Mutual.

On the first appeal both Wire Works and Brownell were parties and appeared. Neither Wire Works nor Brownell appeared at the hearing on remand nor have they appeared in this appeal and are bound by the foreclosure judgment.

In the first appeal this court discussed and adopted, in the main, the rationale of the California courts as expressed in *Cherry v. Home Savings & Loan Asso.* (1969), 276 Cal. App. 2d 574, 81 Cal. Rptr. 135.[3] *Cherry* pointed out that "due on sale" clauses were not against public policy as a restraint on alienation; that the mortgagee had a legitimate interest in knowing who the obligor was and to evaluate him as a financial security risk over and above the physical security protection; and that it was not inequitable for the mortgagee to protect itself against the contingencies of increased interest rates.

Megal argues that we should reconsider our reliance on *Cherry* because of a subsequent California case— *Tucker v. Lassen Savings & Loan Asso.* (1974), 12 Cal. 3d 629, 116 Cal. Rptr. 633, 526 Pac. 2d 1169. Both *Cherry* and *Tucker* involved "due on sale" clauses. In *Cherry* there was an outright sale of the property and in *Tucker* a land contract such as we have here. The California court distinguished *Cherry* and *Tucker* hold that the nature of an outright sale and a land contract was considerably different in that in an outright sale the "due on sale" clause constituted little restraint on aliena-

---

[3] *Also see: La Sala v. American Savings & Loan Asso.* (1971), 5 Cal. 3d 864, 97 Cal. Rptr. 849, 489 Pac. 2d 1113.

tion while the same clause did amount to considerable restraint in land contract sales.

Because we found the rationale of the *Cherry Case* to be persuasive, it does not follow that we should reject it because the same jurisdiction has distinguished or overruled it in part. Our holding in the first appeal in this case became the rule of this court and should be adhered to unless we are convinced the rule is wrong. In the first appeal we did consider that we were dealing with a land contract as contrasted to an outright sale. We stated at page 110:

> "It is difficult to see, given the general policy behind a 'due-on-sale clause,' why a transfer of land title by a land contract does not pose the same potential hazard to the interests of the mortgagee as most other recognized types of conveyances.
>
> "We, accordingly, hold that a due-on-sale clause or in this case, to use the terms of the mortgage note, 'due . . . if . . . convey[ed] away . . . or if the title thereto shall become vested in any other,' is not against public policy and is enforceable as a contractual condition of the note and mortgage."

We are not convinced we should depart from our prior holding.[4]

Megal's principal argument is that Mutual has not suffered an impairment of its security. In *Mutual Federal Savings & Loan Asso. v. American Medical Services* (1974), 66 Wis. 2d 210, 216, 217, 223 N. W. 2d 921, we stated:

> "While the *Wire Works Case* apparently viewed an acceleration clause as related to preservation of the security of the mortgage holder, the decision does not make proof of actual impairment of security a condition precedent to a foreclosure under the 'due on sale' clause.

---

[4] *Also see: Gunther v. White* (Tenn. 1973), 489 S. W. 2d 529; *Malouff v. Midland Federal Savings & Loan Asso.* (1973), 181 Colo. 294, 509 Pac. 2d 1240.

However, an absence of impairment of security is a factor that a trial court may put on the scales in weighing the equities involved."

In *Mutual Federal Savings & Loan Asso. v. American Medical Services, supra,* we approved the balancing of equities by the trial court.[5]

In this case, in balancing the equities, we believe there are three factors to be considered: (1) laches, (2) rising interest rates, and (3) impairment of security.

The trial court found that equitable defense of laches had not been established. Megal does not seriously challenge this finding nor could it successfully do so. Wire Works and Kurz & Root, and presumably its chairman Brownell, knew in 1967 the position of Mutual. Mutual would consent to the transfer only upon an agreement to raise the interest rate from six and one-quarter percent to seven percent and a one percent assumption charge. By virtue of the terms of the land contract between Megal and Wire Works, Megal recognized Mutual might well insist upon increased interest or elect to enforce the "due on sale" clause. Megal has not shown a reliance upon a delay by Mutual nor inability to preserve proof of other equitable defenses it might have had. The trial court concluded that the recording of the subsequent land contract and assignment was not constructive notice (and correctly so, see our first opinion, 58 Wis. 2d at p. 112), and that distribution of routine business activity circulars by Megal was insufficient to constitute actual notice. The trial court found Mutual did not have actual knowledge until November 20, 1969, that it elected to declare the entire sum due November 25, 1969, and commenced the foreclosure action in January, 1970. We agree with the trial court, the defense of laches has not been established.

---

[5] A balancing of equities in *Mutual Federal Savings & Loan Asso. v. American Medical Services* resulted in a denial of the right to enforce the "due on sale" clause.

Our first opinion stated that rising interest rates was a proper consideration. While an increased interest rate is somewhat of a restraint of alienation, it is not an absolute one. In this case Kurz & Root knew, and Megal and Brownell inferentially knew, that Mutual would consent to the transfer if the interest rate was raised from six and one-quarter percent to seven percent. There is no contention that the seven percent rate did not reflect the current average interest rate at the time the transfer was proposed, nor any claim that the demand for seven percent was unconscionable or overreaching. Obviously it was costing Mutual more to obtain the funds it made available for borrowing. Mutual would reap no real windfall; on the contrary Mutual might be required to charge the current borrowers more to make up the deficiency resulting from the past transaction.

Although this note and mortgage did not contain an interest acceleration provision, such provisions are not against public policy. Sec. 215.21 (3), Stats., specifically permits savings and loan associations to include such provisions in its notes and mortgages. We conclude the interest rate proposed by Mutual here was neither unfair nor inequitable.

The impairment of security, although an important factor, is not conclusive in the balancing of equities.[6] Megal argues there is no impairment of security here because all payments called for in the note and mortgage have been made and are current, and that there has been no waste of the secured property. This fact is not seriously contested by Mutual. However, basic to the theory of impairment of security is that the lender not only makes a valued judgment as to the adequacy of the physical security but also relies upon its evaluation of the business character and reputation of the borrower in

---

[6] *Mutual Federal Savings & Loan Asso. v. American Medical Services, supra.*

determining whether the loan should be made and the rate of interest to be charged. Likewise, if the lender in his evaluation of the business character and reputation of a subsequent obligor believes collection may be more difficult and foreclosure more probable than in the case of the original borrower, even though the physical security may be adequate, the lender may properly rely upon this fact in electing whether to exercise its option in a "due on sale" clause. This business judgment should in most cases be left solely to the discretion of the lender.

Here, not only was there one nonapproved transfer but two. Kurz & Root at least, and inferentially Megal and Brownell, knew the position Mutual would take upon transfer. Further, the transfers were made without any adequate attempt to notify Mutual. The benefit to Wire Works, Megal and Brownell was obvious—they were able to make advantageous transactions and transfers without paying the current interest rates. The disadvantage to Mutual is equally obvious. It, in substance, furnished a substantial part of the funds needed for these transfers at an interest rate that did not adequately reflect current interest rates and its costs in providing the funds.

In balancing these facts we conclude that it was not inequitable to permit Mutual to declare the entire sum due and pursue its right to foreclose the mortgage.

*By the Court.*—Judgment affirmed.