OCCIDENTAL SAVINGS AND LOAN ASSOCIATION,
A CORPORATION, APPELLEE, V. VENCO PARTNERSHIP,
A PARTNERSHIP, AND MIDWEST CRATING AND PACKING
SERVICES, A PARTNERSHIP, APPELLANTS.

293 N. W. 2d 843

Filed June 17, 1980. No. 42741.

Norman Denenberg, for appellants.

Robert M. Zuber of Zuber & Ginsburg, for appellee.

William A. Tinstman, for amicus curiae Neb. League of Savings Assn.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

KRIVOSHA, C. J.

The instant appeal presents the court with its first opportunity to consider the validity and enforceability of what is commonly referred to as a "due on sale" clause frequently found in a real estate mortgage. The trial court concluded that the "due on sale" clause was both valid and enforceable and, accordingly, ordered foreclosure of the mortgage containing the questioned clause. We have reviewed the files and records and the law applicable to such matters and conclude that the trial court was correct in its conclusions. Accordingly, therefore, we affirm the judgment of the trial court.

While "due on sale" clauses take a number of forms, essentially they are, in form, similar to the clause involved in the instant case, which provided "[I]n the event of a sale of said premises without the written approval of said [lender], then the whole indebtedness hereby secured shall, at the option of said [lender], immediately become due and collectible without further notice, and this mortgage may then be foreclosed to recover the amount due on said note or obligation . . . ." Another variation on this theme is what is commonly referred to as a "due on encumbrance" clause, which is essentially

the same as a "due on sale" clause, except that the triggering mechanism is the placing of a subsequent lien or encumbrance upon the mortgaged property. We concern ourselves here only with the "due on sale" clause.

While this is our first opportunity to examine the validity of "due on sale" clauses, many other courts have already made such an examination and reached varying results. The clause has also been the subject of numerous articles. Relevant opinions and articles are collected in an appendix to this opinion.

Most of the cases which have considered this issue have started their analysis by concluding without much discussion that the "due on sale" clause is a restraint on alienation. They have then either upheld the clause or struck it down depending on whether they thought that, under the particular facts, the restraint was reasonable. Likewise, appellants herein urge this court to find that the "due on sale" clause is an unreasonable restraint on alienation, absent the mortgagee pleading and proving that the security is impaired; while the appellees urge us to find that the clause is a reasonable restraint on alienation. We believe that the error committed by most jurisdictions in deciding this matter is their willingness to assume that a "due on sale" clause is a restraint on alienation and that the only issue is reasonableness. In our view, the "due on sale" clause is not a restraint on alienation as that concept is legally defined.

Both parties seem to concede that the language in the questioned clause is not, in a technical sense, a direct restraint on alienation but appellants maintain that the clause has the practical effect of a restraint on alienation and, therefore, should be struck down unless necessary to protect the lender's security.

An examination of the law pertaining to restraints

on alienation makes it clear that a "due on sale" clause is not a restraint on alienation and cannot be so considered for any purpose, theoretical or practical.'

The Restatement of Property § 404 (1944) defines a restraint on alienation as follows:

(1) A restraint on alienation, as that phrase is used in this Restatement, is an attempt by an otherwise effective conveyance or contract to cause a later conveyance

(a) to be void; or

(b) to impose contractual liability on the one who makes the later conveyance when such liability results from a breach of an agreement not to convey; or

(c) to terminate or subject to termination all or a part of the property interest conveyed.

(2) If a restraint on alienation is of the type described in Subsection (1), Clause (a), it is a disabling restraint.

(3) If a restraint on alienation is of the type described in Subsection (1), Clause (b), it is a promissory restraint.

(4) If a restraint on alienation is of the type described in Subsection (1), Clause (c), it is a forfeiture restraint.

One need simply read the various subparts of § 404 to conclude that a "due on sale" clause does not, in any manner, bring about any of the effects noted there and cannot, therefore, be a direct restraint on alienation.

The questioned clause in no manner precludes the owner-mortgagor from conveying his property. The owner is free to convey without legal restraint and the conveyance does not cause a forfeiture of the title, but only an acceleration of the debt.

It is true that the possibility of acceleration may impede the ability of an owner to sell his property as

he wishes; nonetheless, not every impediment to a sale is a restraint on alienation, let alone contrary to public policy. It is a fact that zoning restrictions, building restrictions, or public improvements may impede the sale and substantially affect the ability of an owner to realize a maximum price. Yet no one suggests that such restrictions or covenants, as a class, are invalid simply because they affect the ease with which one may dispose of one's property. We are somewhat at a loss to understand how or why so many courts have been willing to describe a "due on sale" clause as a restraint on alienation and we are unwilling to do so. Therefore, we begin our analysis by holding that "due on sale" clauses are not direct restraints on alienation within the meaning of the law.

Appellants next argue that, if a "due on sale" clause is not a direct restraint on alienation and, therefore, void, it is, at least, an unreasonable *indirect* restraint on alienation which should be declared invalid and unenforceable as a matter of public policy unless a mortgagee pleads and proves that his security is in jeopardy. That argument may be due, in part, to some overly broad language in our decision in *Cast v. National Bank of Commerce T. & S. Assn.,* 186 Neb. 385, 391, 183 N.W.2d 485, 490 (1971), wherein we said:

> A majority of this court, including the writer, has come to the conclusion that the law is the same on direct and indirect restraints on alienation. The authorities are not in accord on the question. While much has been written on the subject, we adopt the following as a proper statement of the law: "As used in this treatise, the expression 'restraint on alienation' refers not merely to the restriction of the legal power of alienation, but also to the restriction of alienability as a practical matter. Any provision in a deed, will, con-

tract, or other legal instrument which, if valid, would tend to impair the marketability of property, is a restraint on alienation." Simes and Smith, The Law of Future Interests (2d Ed.), § 1111, p. 4. "In brief, the law is concerned primarily with practical alienability, not with a theoretical power of alienation." Simes and Smith, The Law of Future Interests (2d Ed.), § 1115, p. 8.

Whatever an indirect restraint on alienation as envisioned by us in *Cast* may be, a "due on sale" clause in a mortgage does not fall within that category. We perhaps were overly generous in our statement in *Cast* that "[a]*ny provision* . . . which, if valid, would tend to impair the marketability of property, is a restraint on alienation." *Id.* (Emphasis supplied.) As we have already observed with regard to zoning restrictions and building restrictions, some covenants may impair the marketability of property and yet not be restraints on alienation, direct or indirect, as that concept is known in the law. As an example, a covenant in a deed that requires the dedication of property solely to residential purposes is not a restraint on alienation even if the owner could sell the property at a higher price for commercial purposes. The most that need be said about *Cast* is that the restriction in question affected the validity of title and totally precluded the fee title owner from transferring title for a period of 25 years. There is no similarity between the language of the will in the *Cast* case and a common "due on sale" clause in a mortgage.

The difficulty in attempting to determine the validity of a contract based upon some notion of an indirect restraint on alienation and a concept of "practical inalienability" is that there is no framework within which a court may operate. Parties to a contract can never know, absent litigation, whether the contract is valid or not. Such a result is undesirable

and should be avoided if possible.

Nothing better demonstrates that a "due on sale" clause, in and of itself, is not a practical restraint on alienation than the facts in the instant case. The land in question was unimproved urban land subject to a 30-year mortgage. Unless the owner intended to construct a building for cash (an unlikely event), the property would have to be remortgaged in order to grant to the mortgagee of the improvement a first mortgage on not only the improvement, but on the land as well. It is not realistic to argue that the owner here intended the mortgage to remain in effect for the entire mortgage term, nor is it realistic to argue that the lender could not reasonably expect the mortgage to be prepaid well in advance of its due date.

The facts of the instant case further establish that the clause did not restrain the alienation. The transfer of title was made without any obvious difficulty resulting from the terms of the mortgage. The seller-mortgagor did not even answer the petition to foreclose the mortgage and was declared in default by the court. Moreover, the seller-mortgagor has not appeared in this court and apparently is completely unconcerned with the outcome of this case. How does one argue in light of those facts that the "due on sale" clause was a practical restraint on the alienation of title in this case?

An examination of some of the California cases collected in the appendix best points up the inherent difficulty in attempting to identify an "indirect practical restraint on alienation."

The landmark case involving modern day restraints on alienation is said to be the 1964 case of *Coast Bank v. Minderhout,* 61 Cal. 2d 311, 392 P.2d 265, 38 Cal. Rptr. 505 (1964). In the *Coast Bank* case, the California Supreme Court concluded that, while a "due on sale" clause was a practical restraint on alienation, it was a reasonable restraint and, therefore, was valid per se. This was then followed by a

series of other California decisions, each of which narrowed the conditions under which a "due on sale" clause would be considered valid. See, *La Sala v. American Sav. & Loan Ass'n,* 5 Cal. 3d 864, 489 P.2d 1113, 97 Cal. Rptr. 849 (1971); *Tucker v. Lassen Sav. & Loan Ass'n,* 12 Cal. 3d 629, 529 P.2d 1169, 116 Cal. Rptr. 633 (1974). California's latest encounter with this problem was the 1978 decision by the California Supreme Court in the case of *Wellenkamp v. Bank of America,* 21 Cal. 3d 943, 582 P.2d 970, 148 Cal. Rptr. 379 (1978). By the time the California court decided the *Wellenkamp* case, it had come full circle from its initial position in the *Coast Bank* case and determined that a "due on sale" clause was invalid and unenforceable unless the lender could demonstrate that enforcement was reasonably necessary to protect the lender against the impairment of its security or the risk of default.

A more interesting aspect of the *Wellenkamp* decision is the basis upon which the court reached its conclusion. Relatively few legal principles are relied upon as authority. The decision is based primarily on considerations of social need and the assumed effect of a "due on sale" clause in the marketplace. The rights and needs of the seller, as seen by the court, are detailed and balanced against the rights and needs of the lender, as seen by the court. The court concludes that the rights and needs of the seller outweigh those of the lender, notwithstanding the fact that the parties have freely entered into a contract to the contrary.

A further difficulty with the *Wellenkamp* decision is pointed up by footnote 9 wherein the author notes, on behalf of the court:

> In the instant case the party seeking enforcement of the due-on clause is an institutional lender. We limit our holding accordingly. We express no present opinion on the question whether a private lender, including

the vendor who takes back secondary financing, has interests which might inherently justify automatic enforcement of a due-on clause in his favor upon resale.

It is difficult to understand why an institutional lender using private funds of individual depositors should be treated differently than an individual lender using his own funds.

While the immediate result obtained by the California court may seem to be in the best interest of everyone except the lender, one need only give some careful thought to the results which must flow from such a decision to recognize that whatever relief may be provided for the seller is momentary and fleeting. Decisions such as *Wellenkamp* place an unreasonable burden upon lenders and call upon courts to act as periodic arbitrators in the sale of real estate.

If any market hindrance imposed by the lender can be held to be a practical restraint on alienation and, therefore, invalid, no solution to varying market conditions can ever be validated and, ultimately, no one will be able to secure satisfactory financing.

If we conclude that a "due on sale" clause is an unreasonable restraint on alienation and is, therefore, void, it may follow that mortgages of short duration (less than 3 or 4 years) with variable rates are likewise invalid as indirect restraints on alienation. Certainly, whatever arguments are made about the inability to convey property because of a "due on sale" clause, may also be made with regard to a mortgage that must be renegotiated within 2 or 3 years after the sale at a price which the subsequent buyer may not be able to determine. It is true that the current owner of the property will be faced with the same problems whenever a short-term rollover mortgage or variable interest rate is placed upon the property and, therefore, the problems are not unique to a subsequent seller. Nevertheless, if

the rationale for declaring a "due on sale" clause invalid as a restraint on alienation is based upon some notion that buyers will be less willing to buy at a premium property that does not have a long-term fixed mortgage, then one must conclude that short-term variable rates and rollover mortgages will similarly impede the sale of property and constitute indirect restraints on the free conveyance of property, and should, therefore, be held invalid. Certainly courts should not get caught in that thicket. The oft-repeated assumption that a "due on sale" clause restrains the alienation of property is without satisfactory proof.

The difficulty with determining that a "due on sale" clause is an indirect restraint on alienation is that it requires investigations by the court of many different types of conditions and people unrelated to the mortgage document itself. A legal concept should not be established on that basis.

Appellants further argue that the only purpose of the "due on sale" clause is to protect the lender's interest in the security and it should not be used as a device to permit the lender to rearrange its loan portfolio. While there is no evidence in this record to support the former conclusion, there is support for the appellee's position that "due on sale" clauses are the main vehicle for increasing interest rates when money is scarce. See Bernhardt, *The Obligation,* California Real Estate Secured Transactions 185 (J. Hetland. ed. 1970); Senate Comm. on Banking, Housing & Urban Affairs, Federal National Mortgage Ass'n Public Meeting on Conventional Mortgage Forms, S. Doc. No. 92-21, 92nd Cong., 1st Sess. 44-45 (1971).

The restraint, if any, in this case does not attach itself to the title and the conveyance thereof but rather to the mortgage and the assumption thereof. The lender never promised the seller that another could assume the mortgage; as a matter of fact, it

told the seller the contrary. Should we, therefore, ignore the plain terms of the contract and look for some hidden intention, unsupported by evidence?

A further inequity of declaring all "due on sale" clauses invalid occurs when, as in the instant case, the note and mortgage contain no prepayment penalty. In the event that the market should decline below the established mortgage rate, the seller and his subsequent buyer are at liberty to pay off the lender without penalty and adjust their loan by seeking another, lower interest, mortgage. A "due on sale" clause allows a lender to adjust its portfolio in a rising market. The effect of a rising interest market and an invalid "due on sale" clause would be to permit a seller to obtain a premium for the sale of its property at the expense of the lender. We know of no principle in law or equity which would sustain such a position. We must find, as a matter of law, that "due on sale" clauses are neither direct nor indirect restraints on alienation and, therefore, are not void as such.

The only remaining basis for declaring the questioned clauses invalid would be a finding that they are repugnant to public policy. This should not be done lightly or without sufficient compelling reason.

As noted in 17 C.J.S. *Contracts* § 211 (1963):

> The rules which hold a contract void as against public policy should not be unduly extended. Persons should not be unnecessarily restricted in their freedom to make their own contracts; and, therefore, the court should act cautiously and not hold contracts void as being contrary to public policy unless they are clearly and unmistakably so. The usual and most important function of courts is to enforce and maintain contracts rather than to enable parties to escape their obligations on the pretext of public policy.

*Id.* at 1022-24. Further, we have said:

> It is not the province of courts to emasculate the liberty of contract by enabling parties to escape their contractual obligations on the pretext of public policy unless the preservation of the public welfare imperatively so demands.

*E. K. Buck Retail Stores v. Harkert,* 157 Neb. 867, 887, 62 N.W.2d 288, 301 (1954).

Not only are we convinced that a "due on sale" clause is not repugnant to public policy but, to the contrary, we recognize that, under certain economic circumstances, they may favor the public interest and, therefore, be supportive of public policy. On the one hand, the assets of savings and loan associations are principally invested in long-term mortgages, while, on the other hand, the funds necessary to make such loans are obtained from short-term and demand savings accounts and certificates. As the cost of obtaining deposits rises, the spread widens between what the association must pay for funds by way of interest and what the association receives from borrowers. Once the spread gets too great, the association will be unable to meet the standards set by government regulations and will fail. The potential failure of savings and loan associations and the loss of their depositors' funds should be of no less a concern to the courts than the inability of a property owner to transfer its mortgage at a premium when selling its property. Balancing portfolio return with cost of money is an important factor in the survival of lending associations. The "due on sale" clause is an important device in maintaining that balance.

It is accepted almost without dispute that a stipulation in a mortgage, providing that the whole debt secured thereby shall become due and payable upon failure of the mortgagor to pay the interest or any installment of principal upon maturity thereof or to comply with *any other condition of the mortgage* is a

legal, valid, and enforceable stipulation and is not in the nature of a penalty or forfeiture which a court of equity will refuse to enforce. *Plummer v. Park,* 62 Neb. 665, 87 N.W. 534 (1901); *Crawford v. Houser,* 115 Neb. 62, 211 N.W. 165 (1926); *Hockett v. Burns,* 90 Neb. 1, 132 N.W. 718 (1911). Although a contrary rule has apparently been applied in some instances, it would seem that, generally, accelerative provisions in mortgages are not viewed with disfavor by the courts but are construed and the intention of the parties ascertained by the same rules as with other contract clauses. Sometimes an agreement for acceleration is even inferred from the terms of a particular mortgage. See 55 Am. Jur. 2d *Mortgages* § 371 (1971).

We are cited to no authority, nor are we able to find any, which would legally justify declaring a contract provision such as the one in the instant case, generally referred to as a "due on sale" clause, to be contrary to public policy and void. Generally, a "due on sale" clause contained in a mortgage contract is not contrary to the public policy of this jurisdiction and is, therefore, valid and enforceable.

A "due on sale" clause is a form of an acceleration clause and, as such, should be subject to the same rules as other acceleration clauses, including the protection of equitable defenses.

We said in our recent decision of *Redding v. Gibbs,* 203 Neb. 727, 736, 280 N.W.2d 53, 59 (1979):

> "It is held, apparently without dissent, that a court of equity has the power to relieve a mortgagor from the effect of an operative acceleration clause, when the default of the mortgagor was the result of some unconscionable or inequitable conduct of the mortgagee." [Annot., 70 A.L.R. 993 (1931).]

If permitting the lender to exercise the "due on sale" clause in a particular case would be inequit-

able, a court of equity is not helpless to fashion appropriate relief. But the burden to plead and prove the facts in that regard should be upon the party seeking relief. See *Timmerman v. Hertz,* 195 Neb. 237, 238 N.W.2d 220 (1976); *Kansas-Nebraska Nat. Gas Co., Inc. v. Hawkeye-Security Ins. Co.,* 195 Neb. 658, 240 N.W.2d 28 (1976).

Accordingly, therefore, we hold that a "due on sale" clause in an otherwise valid mortgage is enforceable, absent pleading and proof by the mortgagor that such enforcement would be inequitable. Accordingly, we affirm the judgment of the trial court directing the foreclosure of the instant mortgage.

AFFIRMED.

## APPENDIX TO MAJORITY OPINION
### Court Opinions

Alabama: *First So. Fed. Sav. & Loan Ass'n v. Britton,* 345 So. 2d 300 (Ala. Civ. App. 1977). Arizona: *Baltimore Life Ins. Co. v. Harn,* 15 Ariz. App. 78, 486 P.2d 190 (1971), *pet. for rev. denied,* 108 Ariz. 192, 494 P.2d 1322 (1972); *Patton v. First Fed. Sav. & Loan Ass'n, etc.,* 118 Ariz. 473, 578 P.2d 152 (1978). Arkansas: *Tucker v. Pulaski Fed. S. & L.,* 252 Ark. 849, 481 S.W.2d 725 (1972). California: *Coast Bank v. Minderhout,* 61 Cal. 2d 311, 392 P.2d 265, 38 Cal. Rptr. 505 (1964), *overruled in Wellenkamp, infra.; Hellbaum v. Lytton Sav. & Loan Ass'n,* 274 Cal. App. 2d 456, 79 Cal. Rptr. 9 (1969); *Cherry v. Home Sav. & Loan Ass'n,* 276 Cal. App. 2d 574; 81 Cal. Rptr. 135 (1969); *La Sala v. American Sav. & Loan Ass'n,* 5 Cal. 3d 864, 489 P.2d 1113, 97 Cal. Rptr. 849 (1971); *Tucker v. Lassen Sav. & Loan Ass'n,* 12 Cal. 3d 629, 526 P.2d 1169, 116 Cal. Rptr. 633 (1974); *Medovoi v. American Sav. & Loan Ass'n,* 62 Cal. App. 3d 317, 133 Cal. Rptr. 63 (1976); *DeMey v. Joujou-Rouche,* 63 Cal. App. 3d 178, 133 Cal. Rptr. 570 (1976); *Wellenkamp v. Bank of America,* 21 Cal. 3d 943, 582 P.2d 970, 148 Cal. Rptr. 379 (1978). Colorado: *Malouff v. Mid-*

*land Federal,* 181 Colo. 294, 509 P.2d 1240 (1973). Florida: *Clark v. Lachenmeier,* 237 So. 2d 583 (Fla. Dist. Ct. App. 1970); *Stockman v. Burke,* 305 So. 2d 89 (Fla. Dist. Ct. App. 1974). Illinois: *Baker v. Loves Park Sav. & Loan Ass'n,* 61 Ill. 2d 119, 333 N.E.2d 1 (1975). Michigan: *Nichols v. Ann Arbor Savings,* 73 Mich. App. 163, 250 N.W.2d 804 (1977). Minnesota: *Holiday Acres No. 3 v. Midwest Fed. Sav. & Loan,* 271 N.W.2d 445 (Minn. 1978). Mississippi: *Sanders v. Hicks,* 317 So. 2d 61 (Miss. 1975). Nevada: *First Commercial Title v. Holmes,* 92 Nev. 363, 550 P.2d 1271 (1976). New Jersey: *Fidelity Land Dev. Corp. v. Rieder & Sons,* 151 N.J. Super. 502, 377 A.2d 691 (1977); *Century Fed. Sav. & Loan Ass'n v. Van Glahn,* 144 N.J. Super. 48, 364 A.2d 558 (1976); *Poydan, Inc. v. Kiriaki,* 130 N.J. Super. 141, 325 A.2d 838 (1974); *Shalit v. Investors Savings & Loan Ass'n,* 101 N.J. Super. 283, 244 A.2d 151 (1968). New York: *Nichols v. Evans,* 92 Misc. 2d 938, 401 N.Y.S.2d 426 (1978); *Mut. Real Estate Inv. Trust v. Buffalo Sav. Bank,* 90 Misc. 2d 675, 395 N.Y.S.2d 583 (1977); *Stith v. Hudson City Sav. Inst.,* 63 Misc. 2d 863, 313 N.Y.S.2d 804 (1970). North Carolina: *Crockett v. Savings & Loan Assoc.,* 289 N.C. 620, 224 S.E.2d 580 (1976). Oklahoma: *Continental Fed. Sav. & Loan Ass'n v. Fetter,* 564 P.2d 1013 (Okla. 1977). Ohio: *People's Savings Ass'n v. Standard Industries,* 22 Ohio App. 2d 35, 257 N.E.2d 406 (1970). Tennessee: *Gunther v. White,* 489 S.W.2d 529 (Tenn. 1973). Utah: *Walker Bank & Trust Company v. Neilson,* 26 Utah 2d 383, 490 P.2d 328 (1971). Washington: *Terry v. Born,* 24 Wash. App. 652, 604 P.2d 504 (1979); *Miller v. Pacific First Federal,* 86 Wash. 2d 401, 545 P.2d 546 (1976); *Bellingham First Fed. v. Garrison,* 87 Wash. 2d 437, 553 P.2d 1090 (1976). Wisconsin: *Mutual Fed. S. & L. Assoc. v. Wisconsin Wire Wks.,* 58 Wis. 2d 99, 205 N.W.2d 762 (1973), 71 Wis. 2d 531, 239 N.W. 2d 20 (1976); *Mutual Federal S. & L. A. v. American Med. Services,* 66 Wis. 2d

210, 223 N.W.2d 921 (1974).

ARTICLES, ANNOTATIONS, AND TREATISES

Bonanno, *Due on Sale and Prepayment Clauses in Real Estate Financing in California in Times of Fluctuating Interest Rates—Legal Issues and Alternatives,* 6 U.S.F. L. Rev. 267 (1972); Flaherty, *Illinois Land Trusts and the Due-on-Sale Clause,* 65 Ill. B. J. 376 (1977); Volkmer, *The Application of the Restraints on Alienation Doctrine to Real Property Security Interests,* 58 Iowa L. Rev. 747 (1973); Bartke and Tagaropulos, *Michigan's Looking Glass World of Due-on-Sale Clauses,* 24 Wayne L. Rev. 971 (1978); ABA Comm. on Real Estate Financing, *Enforcement of Due-on-Transfer Clauses,* 13 Real Prop., Prob. and Trust J. 891 (1978); Comment, *Debt Acceleration on Transfer of Mortgage Property,* 29 U. Miami L. Rev. 584 (1975); Comment, *Mortgages—A Catalogue and Critique on the Role of Equity in the Enforcement of Modern-Day "Due-on-Sale" Clauses,* 26 Ark. L. Rev. 485 (1973.); Comment, *The Due-on-Sale Clause as a Reasonable Restraint on Alienation—A Proposal for Texas,* 8 St. Mary's L.J. 514 (1976); Comment, *Mortgage Consent to Sale Clause; A Reasonable Restraint on Alienation?* 8 John Marsh. J. Prac. & Proc. 513 (1975); Note, *Judicial Treatment of the Due-on-Sale Clause: The Case for Adopting Standards of Reasonableness and Unconscionability,* 27 Stan. L. Rev. 1109 (1975); Note, *Wellenkamp v. Bank of America: A Victory for the Consumer?* 31 Hastings L.J. 275 (1979); Note, *Wellenkamp v. Bank of America: Exercise of Due-on-Sale Clauses as an Unreasonable Restraint Upon Alienation,* 33 U. Miami L. Rev. 722 (1979); Note, *Deeds of Trust—Restraints Against Alienation—Due-On Clause is an Unreasonable Restraint on Alienation Absent a Showing of Protection of Mortgagee's Legitimate Interests,* 47 Miss. L.J. 331 (1976).

See, also, Simes and Smith, The Law of Future Interests, § 1164 (2d ed. 1956); Annot., 69 A.L.R.3d 713

(1976); Annot., 92 A.L.R.3d 822 (1979).

WHITE, J., dissents.

CLINTON, J., concurring.

I concur in the general holding that a "due on sale" clause, such as is contained in the mortgage in this case, is not an invalid restraint on alienation. The opinion contains considerable dicta and arguments from analogy, concerning the full import of which I am uncertain. I, therefore, limit my concurrence.