FIRST FEDERAL SAVINGS & LOAN AS-SOCIATION OF RAPID CITY, South Dakota, a South Dakota banking corporation, Plaintiff and Appellee,

v.

Bruce WICK and Ann M. Wick, husband and wife, Mahlon L. Marr and Elaine B. Marr, Defendants and Appellants.

No. 13667.

Supreme Court of South Dakota.

Considered on Briefs May 17, 1982.

Decided Aug. 11, 1982.

Rehearing Denied Sept. 1, 1982.

Donald R. Shultz of Lynn, Jackson, Shultz & Lebrun, Rapid City, for plaintiff and appellee.

Robert L. Varilek and David P. Olson, Rapid City, for defendants and appellants.

DUNN, Justice.

Appellants Bruce Wick, Ann Wick (Wicks), Mahlon Marr, and Elaine Marr (Marrs) appeal from a judgment by the trial court which foreclosed a mortgage on certain real property located in Rapid City, South Dakota, and awarded appellee First Federal Savings & Loan Association of Rapid City (First Federal) $46,198.29, said amount to be taken from the sale of the mortgaged property. First Federal was also awarded attorney fees and costs in the amount of $4,889.59. We affirm.

On February 6, 1978, Wicks executed to First Federal a promissory note for $44,-800.00. This promissory note was secured by a mortgage on a parcel of real property located in Rapid City. Paragraph seven of this mortgage provides in part:

If all or any part of the Property or an interest therein is sold or transferred by Mortgagor without Mortgagee's prior written consent, excluding (a) the creation of a lien or encumbrance subordinate to this Mortgage, (b) the creation of a purchase money security interest for household appliances, (c) a transfer by devise, descent or by operation of law upon the death of a joint tenant or (d) the grant of any leasehold interest of three (3) years or less not containing an option to purchase, Mortgagee may, at Mortgagor's option, and upon sixty (60) days notice to Mortgagor, declare all the sums secured by this Mortgage to be immediately due and payable, and this Mortgage may be foreclosed as provided by statute. Mortgagee shall have waived such option to accelerate if, prior to the sale or transfer, Mortgagee and the person to whom the Property is to be sold or transferred reach agreement in writing that the credit of such person is satisfactory to Mortgagee and that the interest payable on the sums secured by this Mortgage shall be at such rate as Mortgagee shall request. If Mortgagee has waived the option to accelerate provided in this paragraph 7, and if Mortgagor's successor in interest has executed a written assumption agreement accepted in writing by Mortgagee, Mortgagee shall release Mortgagor from all obligations under this Mortgage and the Note. No prepayment penalty shall be imposed on the Mortgagor as a result of the acceleration of the maturity of all sums secured by this Mortgage and the payment thereof by Mortgagor as a result of this paragraph.

The note and mortgage provided for an annual interest rate of nine percent. On January 15, 1981, Wicks sold the mortgaged property to Marrs on a contract for deed. In addition to a $23,000.00 down payment, the contract for deed provided that Marrs pay Wicks nine and one-quarter percent interest on the balance due.

Prior to selling the property, Wicks contacted First Federal concerning financing for a new home they intended to purchase. First Federal informed them that the new home had a due-on-sale clause in its existing mortgage, which would be accelerated. Wicks were also informed that their present mortgage loan had a similar clause.

Knowing these facts, Wicks sold the property to Marrs on a contract for deed without further contact with First Federal. The following language was incorporated in the contract for deed:

> [T]his Contract is drawn with paragraph 7 in mind and is meant to comply with paragraph 7, to-wit: "(a) the creation of a lien or encumbrance subordinate to this Mortgage."; and that they are in compliance with paragraph 7 of said Mortgage and that this Contract is to be an interest in the real estate that is subordinate to the First Federal Savings and Loan Association mortgage and that this does not require the First Federal Savings and Loan Associations prior written consent.

First Federal notified Wicks of default on February 18, 1981, based on the sale of the mortgaged property without its prior written consent. It also gave sixty-days notice of its intent to foreclose, thereby exercising its right to accelerate granted under the due-on-sale clause. Wicks refused to make payment in full on the note and mortgage, consequently, First Federal initiated this action.[1]

---

1. Wicks' contention that the trial court erred in holding that federal regulations promulgated by the Federal Home Loan Bank Board govern the terms of the due-on-sale clause of this mortgage under the doctrine of federal preemption will not be dealt with in this case in light of the recent United States Supreme Court holding in *Fidelity Federal Sav. & Loan Ass'n v. de la Cuesta*, —— U.S. ——, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982). In that case, the Supreme Court found that regulations permitting federally chartered savings and loan associations to include due-on-sale clauses in mortgage loan contracts preempt state law restricting their use. Although South Dakota does not have a statute limiting the use of due-on-sale clauses, we find *de le Cuesta* controlling as it relates to Wicks' preemption argument and, in light of this case, we see no need to review the merits of this argument any further.

Wicks contend the contract for deed did not constitute a sale or transfer as provided for in the due-on-sale clause, but rather created a lien or encumbrance subordinate to First Federal's mortgage which would constitute an exception to the enforcement of the due-on-sale clause. We do not agree. The due-on-sale clause provides that First Federal may accelerate payment "[i]f all or any part of the Property or any interest therein is sold or transferred by Mortgagor without Mortgagee's prior written consent[.]"

■ This court recently dealt with this issue in *First Federal Savings & Loan Ass'n v. Lovett*, 318 N.W.2d 133 (S.D.1982), and *First Fed. Sav. & Loan Ass'n, etc. v. Kelly*, 312 N.W.2d 476 (S.D.1981). In both cases we held that under a contract for deed, the installment vendor maintains legal title to the property while the vendee holds equitable title and has the right to use and possession of the property. "[E]ven though a contract for deed only transfers equitable title to the vendee, this is sufficient conveyance to trigger the mortgagee's rights as provided for in a due on sale clause." *Lovett*, 318 N.W.2d at 135, quoting *Kelly*, 312 N.W.2d at 481. We are aware of Wicks' assertion that in *Sweet v. Purinton*, 40 S.D. 17, 166 N.W. 161 (1918), this court held a vendee did not become vested with equitable title until he tendered full and complete performance on an executory contract and had acquired legal title. We have reviewed this decision in light of our subsequent decisions, *Lovett, supra,* and *Kelly, supra,* and note the inconsistent positions these decisions take regarding the transfer of equitable title to the vendee in contract for deed situations. Therefore, we now expressly overrule *Sweet v. Purinton, supra,* to the extent it held that a vendee acquires an equitable interest only and not an equitable title in an executory contract for the sale of land. We reach this conclusion to clarify this apparent inconsistency. This conclusion is not dispositive in the case at hand, however, since we believe the language in the mortgage was sufficiently broad to encompass even an equitable interest to the vendee in this instance.

■ Under SDCL 44–1–7, a lien transfers no title to the property. Since we recognized in *Lovett* and *Kelly* that equitable title is transferred to the vendee under a contract for deed, this cannot be a lien which would constitute an exception to the enforcement of the due-on-sale clause. We hold that the contract for deed herein involved effectively triggered the due-on-sale clause found within the mortgage.

■ Wicks maintain that it would be unconscionable to allow First Federal to enforce the due-on-sale clause. This court recognized in *Kelly* that the question of enforceability of a due-on-sale clause in a mortgage is within the field of equity, and thus is subject to equitable defenses. A court of equity has the power to relieve a mortgagor from the effect of an operative acceleration clause, when the mortgagor's default was the result of some unconscionable or inequitable conduct of the mortgagee. *Redding v. Gibbs*, 203 Neb. 727, 280 N.W.2d 53 (1979). The burden to plead and prove the facts in that regard, however, is on the party seeking relief. *Occidental Sav. & Loan Ass'n v. Venco*, 206 Neb. 469, 293 N.W.2d 843 (1980).

Here, the due-on-sale clause provision is clear and unambiguous in its provisions for acceleration of the loan if the borrower defaults or, in the alternative, for renegotiation of the interest rate with the purchaser. Wicks do not contend that they were denied the opportunity to read the mortgage prior to entering into the agreement, or that they did not comprehend the agreement. The Nebraska Supreme Court acknowledged in *Occidental*:

> A 'due on sale' clause allows a lender to adjust its portfolio in a rising market. The effect of a rising interest market and an invalid 'due on sale' clause would be to permit a seller to obtain a premium for the sale of its property at the expense of the lender. We know of no principle in law or equity which would sustain such a position.

206 Neb. at 479, 293 N.W.2d at 848. We do not find the trial court's determination

clearly erroneous that the contract was not unconscionable. SDCL 15–6–52(a); *Kelly, supra.*

■ Wicks contend that the mortgage and note required payment of a usurious rate of interest. The rate of interest specified in the instruments was nine percent per annum. At the time the contract was entered into in 1978, SDCL 54–3–7 (repealed in 1981 S.D.Sess.L. ch. 350, § 1) provided that the highest rate of lawful interest which could be contracted for in this state was ten percent per annum. Under paragraph seven of the mortgage, Wicks are released from all obligations under the mortgage and note, if Wicks' successor in interest assumes the mortgage. The rate of interest contracted for between First Federal and Wicks' successor in interest is not pertinent in determining whether Wicks' mortgage and note required payment of a usurious rate of interest.

■ Finally, Wicks contend that the trial court erred in awarding Marrs $4,889.59 in attorney fees and costs. We disagree. First Federal submitted to the trial court an itemized billing, which included a request for legal intern fees. SDCL 16–18–2.2(5) prohibits certified legal interns from receiving compensation for their services from the person on whose behalf the services are rendered; it does not, however, prevent an attorney from charging his client for services rendered by a legal intern. In this instance, the certified legal intern received compensation from her employer, not the client, First Federal. The research performed by a certified legal intern may be considered by the trial court in determining a reasonable award of attorney fees. We hold that the attorney fees awarded were reasonable. *See* SDCL 21–49–13(2); SDCL 21–49–23(1); *Kelly, supra.*

We affirm the judgment.

WOLLMAN, C. J., and HENDERSON, J., concur.

MORGAN and FOSHEIM, JJ., concur specially.

MORGAN, Justice (concurring specially).

I would hold that, notwithstanding *Fidelity Federal Sav. & Loan Ass'n v. de la Cuesta,* —— U.S. ——, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982), the enforcement of a due-on-sale clause remains subject to equitable defenses—including unconscionability. The issue before the Court in *de la Cuesta* was whether the federal regulations preempted California law—that the lender must show impairment of security to accelerate the due-on-sale clause. The statement that Justice Fosheim refers to in his special concurrence merely points out the distinction between the regulation and California law; it is not a holding that these restrictions are the only defenses to a due-on-sale clause.

In *de la Cuesta,* the California law under consideration provided that because a due-on-sale clause is a restraint on alienation, the lender must prove impairment of security interest. Restraint on alienation, however, is a property principle, Restatement of Property § 404(1)(b) (1944), rather than an equitable defense. *See* 27 Am.Jur.2d *Equity* §§ 59–64 (1966); 30 C.J.S. *Equity* § 58 n. 25.10 (1965). I would perceive that where the Court addressed restraint on alienation it dealt only with that subject and not with the broad topic of equitable defenses.

Mortgage foreclosure is an equitable action, *Tilden v. Beckmann,* 203 Neb. 293, 278 N.W.2d 581 (1979); *Freese Leasing Inc. v. Union Trust & Sav. Bank,* 253 N.W.2d 921 (Iowa 1977); *Wisconsin Brick & Block Corp. v. Vogel,* 54 Wis.2d 321, 195 N.W.2d 664 (1972) and, as such, mortgage foreclosures are subject to equitable defenses. *Holiday Acres No. 3 v. Midwest Fed. Sav. & Loan Ass'n,* 308 N.W.2d 471 (Minn.1981); *Redding v. Gibbs,* 203 Neb. 727, 280 N.W.2d 53 (1979); *Wisconsin Brick & Block Corp. v. Vogel, supra.* I do not see *de la Cuesta* as changing the precedents of the many courts that have recognized that equitable defenses may bar enforcement of due-on-sale clauses, including our recent decision in *First Fed. v. Kelly,* 312 N.W.2d 476 (S.D.

1981).[1] I agree with the majority's conclusion that the trial court's determination that the contract was not unconscionable was not clearly erroneous.

FOSHEIM, Justice (concurring specially).

This court has no authority to consider the unconscionability issue because that is not one of the four exceptions to the exercise of a due-on-sale clause under the 1976 Board regulation. The regulation prohibits exercise under the same circumstances enumerated in (a) through (d) of Paragraph 7 of the instant mortgage, which paragraph is set out in the majority opinion.

---

1. *See, e.g., Holiday Acres No. 3 v. Midwest Fed. Sav. & Loan Ass'n*, 308 N.W.2d 471 (Minn. 1981); *Occidental Sav. & Loan Ass'n v. Venco Partnership*, 206 Neb. 469, 293 N.W.2d 843 (1980); *Mutual Fed. Sav. & Loan Ass'n v. Am. Medical Services*, 66 Wis.2d 210, 223 N.W.2d 921 (1974); *Mutual Fed. Sav. & Loan Ass'n. v. Wisc. Wire Works*, 58 Wis.2d 99, 205 N.W.2d 762 (1973) *aff'd*, 71 Wis.2d 531, 239 N.W.2d 20 (1976); *Miller v. Pacific First Fed. Sav. & Loan Ass'n*, 86 Wash.2d 401, 545 P.2d 546 (1976); *Crockett v. First Fed. Sav. & Loan Ass'n*, 289 N.C. 620, 224 S.E.2d 580 (1976); *Baker v. Loves Park Sav. & Loan Ass'n*, 61 Ill.2d 119, 333 N.E.2d 1 (1975).